**MCGUIREWOODS LLP**
Alicia A. Baiardo SBN #254228
abaiardo@mcguirewoods.com
Todd J. Dressel SBN #220218
tdressel@mcguirewoods.com
Two Embarcadero Center, Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944

Amy Morrissey Turk (*pro hac vice granted*)
VA SBN #44957
aturk@mcguirewoods.com
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: 757.640.3700

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Wells Fargo & Co.*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER, individually, and on behalf of all others similarly situated, | CASE NO. 3:24-cv-06778-SK |
| Plaintiff, | The Hon. Magistrate Judge Sallie Kim |
| vs. | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER** |
| WELLS FARGO BANK, N.A., WELLS FARGO & CO, AMERICAN ARBITRATION ASSOCIATION, INC., and DOES 1 through 5, inclusive, | Courtroom C<br>Hearing Date: April 14, 2025<br>Hearing Time: 9:30 a.m. |
| Defendant. | First Amended Complaint Filed: January 31, 2025 |

1    **TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

2    PLEASE TAKE NOTICE THAT on April 14, 2025, at 9:30 a.m., or as soon thereafter as

3    the matter can be heard in Courtroom C of the above-entitled Court, located at 450 Golden Gate

4    Ave., San Francisco, CA 94102, Defendants Wells Fargo & Company and Wells Fargo Bank N.A.,

5    (together, "Wells Fargo"), will, and hereby do, move the Court to transfer this case brought by

6    Plaintiff Marlene Wagman-Geller ("Ms. Wagman-Geller") to Judge Benjamin J. Cheeks in the

7    United States District Court, Southern District of California pursuant to the First-to-File Rule and

8    28 U.S.C. § 1404(a).

9    Under the First-to-File Rule, transfer of this case to Judge Cheeks is proper to avoid

10    inconsistent judgments and conserve judicial resources. Ms. Wagman-Geller is required to

11    individually arbitrate her claims pursuant to the terms of the applicable arbitration agreement

12    between Wells Fargo and Ms. Wagman-Geller, as described in length in Wells Fargo's concurrently

13    filed Motion to Compel Arbitration. In *Mosley, et al. v. Wells Fargo & Co., et al.*, No. 3:22-cv-

14    01976-BJC-SBC (S.D. Cal. filed Dec. 13, 2022) [hereinafter "*Mosley*"], and recently transferred

15    *Penuela, et. al. v. Wells Fargo Bank, N.A., et al.*, 3:24-cv-02098-BJC-SBC (S.D. Cal. filed Feb. 8,

16    2024) [hereinafter "*Penuela*"], Wells Fargo briefed the exact issues raised in Ms. Wagman-Geller's

17    Complaint in prior attempts by her counsel, McCune Law Group ("MLG"), to avoid the binding

18    arbitration agreement and to challenge the American Arbitration Association's ("AAA") process in

19    administering individual arbitrations within MLG's mass arbitration against Wells Fargo, including

20    the Process Arbitrator's procedural orders governing the same. In *Mosley*, Judge Dana M. Sabraw

21    granted Wells Fargo's motion to compel and the court's order was affirmed by the Ninth Circuit

22    Court of Appeals on March 7, 2024. Transfer here is warranted to avoid duplication of efforts and

23    the waste of judicial resources in evaluating the same arbitration agreement and a challenge to the

24    same arbitration process that were already considered in *Mosley* and are currently fully briefed and

25    pending before Judge Cheeks in *Penuela*. In addition, 28 U.S.C. § 1404(a) warrants transfer because

26    this case could have been brought in the Southern District of California and because transfer will

27    serve the interests of justice by dissuading MLG's blatant forum shopping.

28    This motion is based upon this Notice, the accompanying Memorandum of Points and

1    Authorities in Support of this Motion, the Declaration of Alicia A. Baiardo, the Declaration of

2    Tiffany Ward, the pleadings and documents filed in this case, and such other written and oral

3    argument as may be presented to the Court.

4    DATED: February 14, 2025                    **MCGUIREWOODS LLP**

5

6                                    By:  */s/ Alicia A. Baiardo*
                                         _____
7                                        Alicia A. Baiardo
                                         Amy Morrissey Turk *(pro hac vice granted)*
8                                        Todd J. Dressel

9                                        Attorneys for Defendants Wells Fargo & Co. and
                                         Wells Fargo Bank, N.A.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF CONTENTS</u>

2

Page

3

I.    INTRODUCTION ................................................................................................. 1

4

II.   FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

5

    A.    Ms. Wagman-Geller Agreed to Arbitrate any Dispute with Wells Fargo and, Consistent with That Agreement, Filed an Arbitration Demand ............................. 2

6

    B.    MLG launches its Mass Arbitration Campaign against Wells Fargo ...................... 3

7

    C.    Wells Fargo Successfully Seeks Relief from MLG's Failure to Perform Diligence into Claimants' Allegations ................................................................... 4

8

9

    D.    The Southern District of California Denied MLG's Attempt to Avoid the October 27 PA Order, and the Ninth Circuit Affirms ......................................... 5

10

    E.    MLG Seeks a Second Bite at the Apple by Filing Another Challenge to the October 27 PA Order with New Plaintiffs in a New Court, the Northern District of California .............................................................................................. 6

11

12

    F.    While MLG's Appeal of the *Mosley* DC Order was Pending, MLG Continue to Raise the Same Procedural Challenges before the AAA ..................... 6

13

14

        1.    MLG could not comply with October 27 PA Order for the vast majority of its claimants ......................................................................... 6

15

16

        2.    The remaining claimants move forward to individual merit arbitrations ................................................................................................ 7

17

        3.    MLG suspends claimants' participation in their individual merit arbitration proceedings ....................................................................... 7

18

19

        4.    MLG refuses to participate in arbitrations and voluntarily dismisses claimants' individual claims ............................................... 8

20

    G.    Judge Westmore Grants Wells Fargo's Motion to Transfer, Transferring *Penuela* to the Southern District of California ..................................................... 8

21

III.  ARGUMENTS & AUTHORITIES ...................................................................... 9

22

    A.    Transfer under the First to File Rule is Warranted .................................................. 9

23

        1.    Chronology favors transfer ......................................................................... 10

24

        2.    Similarity of the parties favors transfer ...................................................... 10

25

        3.    Similarity of the issues favors transfer ....................................................... 11

26

    B.    Transfer is Also Appropriate Under § 1404(a) ...................................................... 13

27

        1.    This action could have been brought in the Southern District of

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER

# **TABLE OF CONTENTS**
### (continued)

Page(s)

California .................................................................................................. 14

2.    The convenience of the parties and the interests of justice favor
transfer ............................................................................................... 14

a)    Plaintiffs' choice of forum suggests she is engaging in forum
shopping and supports transfer. ........................................................ 15

b)    Judicial efficiency favors transfer. .................................................... 16

c)    Feasibility of consolidation favors transfer. ..................................... 17

d)    Local interest does not weigh against transfer. ................................ 18

e)    Convenience of the parties weighs in favor of transfer. .................. 18

f)    The remaining factors are neutral. .................................................... 19

IV.    CONCLUSION ............................................................................................. 20

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Baker v. Bayer Healthcare Pharms. Inc.*,
5
   2015 WL 4456085 (N.D. Cal. July 21, 2015) ........................................................................ 18

6

*Baker v. Meiling*,
   2020 WL 6743585 (C.D. Cal. Sept. 11, 2020) ..................................................................... 16

7

*Bhatia v. Silvergate Bank*,
8
   2023 WL 4937325 (N.D. Cal. Aug. 1, 2023) ........................................................................ 19

9

*Bromlow v. D & M Carriers, LLC*,
   438 F. Supp. 3d 1021 (N.D. Cal. 2020) ............................................................................... 15
10

11

*Cardoza v. T–Mobile USA Inc.*,
   2009 WL 723843 (N.D. Cal. Mar. 18, 2009) ....................................................................... 18
12

*Clarke v. Kraft Heinz Co.*,
13
   2021 WL 4079176 (N.D. Cal. Sept. 8, 2021) ................................................................. 14, 16

14

*Ctr for Biological Diversity v. McCarthy*,
   2015 WL 1535594 (N.D. Cal. Apr. 6, 2015) ........................................................................ 18
15

16

*Ctr. for Medical Progress v. Becerra*,
   2020 WL 7786536 (C.D. Cal. Nov. 12, 2020) ..................................................................... 17

17

*Fitbit, Inc. v. Koninklijke Philips N.V.*,
18
   336 F.R.D. 574 (N.D. Cal. 2020) ......................................................................................... 19

19

*Heredia v. Sunrise Senior Living, LLC*,
   2018 WL 5734617 (N.D. Cal. Oct. 31, 2018) ...................................................................... 20
20

21

*Jia v. Weee! Inc.*,
   2024 WL 218121 (N.D. Cal. Jan. 19, 2024) .............................................................. 9, 12, 13

22

*Johnson v. Siemens Indus., Inc.*,
23
   2023 WL 4686015 (N.D. Cal. July 21, 2023) ...................................................................... 11

24

*Keene v. McKesson Corp.*,
   2015 WL 9257949 (N.D. Cal. Dec. 17, 2015) ............................................................... 13, 14
25

26

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*,
   787 F.3d 1237 (9th Cir. 2015) ....................................................................................... 10, 11

27

28

### TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Kudsk v. Bara Infoware, Inc.*,
    2019 WL 2775573 (N.D. Cal. July 2, 2019) ........................................................... 19

*Kurtz v. Intelius, Inc.*,
    2011 WL 4048645 (E.D. Cal. Sept. 9, 2011) .................................................... 15, 17

*LegalForce, Inc. v. Legalzoom.com*,
    2018 WL 6179319 (C.D. Cal. Nov. 27, 2018) ......................................................... 16

*Martin v. Global Tel\*Link Corp.*,
    2015 WL 2124379 (N.D. Cal. May 6, 2015) ................................................. 16, 18, 19

*Mays v. Wal-Mart Stores, Inc.*,
    2018 WL 1400468 (N.D. Cal. Mar. 19, 2018) ..................................................... 15, 16

*Meza v. Procter & Gamble Co.*,
    2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......................................................... 15

*Mosley v. Wells Fargo & Co.*,
    2023 WL 3185790 (S.D. Cal. May 1, 2023) ............................................................. 5

*Mosley v. Wells Fargo & Co.*,
    2024 WL 977674 (9th Cir. Mar. 7, 2024) ......................................................... 2,5, 12

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) ................................................................... 14

*Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*,
    2014 WL 5422631 (N.D. Cal. Oct. 24, 2014) ................................................. 9, 10, 11

*Puentes v. Amazon.com Servs., LLC*,
    2021 WL 5984867 (C.D. Cal. Sept. 30, 2021) ......................................................... 9

*Rubio v. Monsanto Co.*,
    181 F. Supp. 3d 746 (C.D. Cal. 2016) .................................................................... 19

*Southard v. Kipper Tool Co.*,
    2023 WL 6959145 (N.D. Cal. Oct. 19, 2023) ......................................................... 14

*Vital Pharms. Inc. v. Monster Energy Co.*,
    2020 WL 6162796 (C.D. Cal. Aug. 27, 2020) ........................................................ 17

*Williams v. Bowman*,
    157 F. Supp. 2d 1103 (N.D. Cal. 2001) ................................................................. 15

*Wilson v. Wells Fargo & Co.*,
    2021 WL 1853587 (S.D. Cal. May 10, 2021) ........................................................... 4

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Wilson v. Wells Fargo & Co.*,
    2022 WL 4125220 (S.D. Cal. Sept. 9, 2022) ............................................................ 4

*Young v. L'Oreal USA, Inc.*,
    526 F. Supp. 3d 700 (N.D. Cal. 2021) ............................................................. 10, 11

**Statutes**

28 U.S.C. § 1331 ............................................................................................................ 14

28 U.S.C. § 1367(a) ....................................................................................................... 14

28 U.S.C. § 1391(b)(2) ................................................................................................. 14

28 U.S.C. § 1404 ....................................................................................................*passim*

**Other Authorities**

S.D. Cal. L.R. 40.1(e) & (f)........................................................................................... 18

*Federal Court Management Statistics: September 2024 Report Report*,
    Administrative Office of the U.S. Courts (last accessed February 13, 2025)
    https://www.uscourts.gov/sites/default/files/202412/fcms_na_distcomparison09
    30.2024.pdf.............................................................................................................. 17

## I.    <u>INTRODUCTION</u>

Less than one month before filing this lawsuit, on November 6, 2024, Judge Kandis A. Westmore found Plaintiff's counsel McCune Law Group ("MLG") had engaged in forum shopping filing a similar lawsuit, arising from the same set of underlying facts, in the Northern District of California. *Penuela* Dkt. at No. 32. Despite one of the named plaintiffs residing in the Northern District of California, she still transferred the case, finding that the issues and parties in *Penuela* substantially overlapped with a prior lawsuit filed by MLG, and that there was a "clear indication" of forum shopping by MLG. *Penuela* Dkt. at No. 32. Ms. Wagman-Geller's lawsuit is just another attempt by MLG to avoid its clients' arbitration agreements with Wells Fargo and obtain different results than their previous failed attempts—again improperly brought in the Northern District of California trying to get a different outcome. This one should fare no better.

MLG has filed a series of lawsuits arising out of a mass arbitration it launched against Wells Fargo in 2022 before the American Arbitration Association ("AAA"). As the Court may already be aware, a mass arbitration is a process by which a plaintiff's lawyer or law firm will file hundreds (or thousands) of nearly identical arbitration demands against a single defendant. While this lawsuit involves the claim of just one named plaintiff, the plaintiff here—now Ms. Wagman-Geller—is one of over 3,900 claimants MLG recruited for its mass arbitration.[1]

MLG's efforts to escape valid arbitration agreements and to avoid procedural decisions made within the AAA in this action have gone nowhere.  They were first rejected in *Mosley*, MLG's initial lawsuit. There, Judge Dana Sabraw (and later the Ninth Circuit) ruled that the disputes raised were related to procedures within arbitration and therefore outside the purview of the federal courts such that "Wells Fargo did not act improperly or otherwise breach the [arbitration] agreement. In

---

[1] As the Court is now aware, on November 27, 2024, Defendants' counsel discovered that original Plaintiff Joseph Bacigalupi ("Mr. Bacigalupi") had passed away on October 12, 2024, approximately two weeks after commencing this matter. After notifying MLG who was unaware of his passing, the Parties submitted a Joint Stipulation providing Plaintiff's counsel until January 31, 2025, to confirm Plaintiff's passing and decide if counsel wanted to file an amended Complaint. Dkt. No. 17. On January 31, 2025, the First Amended Complaint ("FAC") was filed on behalf of Ms. Wagman-Geller as the representative plaintiff. Dkt. No. 24.

fact, Wells Fargo simply sought information establishing that each Claimant had a ***legitimate dispute*** with them." *Mosley v. Wells Fargo & Co.*, 2024 WL 977674, at *2 (9th Cir. Mar. 7, 2024) [hereinafter the "*Mosley* Appellate Order"].

For over two years, instead of moving its clients' individual arbitrations forward, MLG has endlessly re-packaged its arguments over and over again before the AAA and the courts, seeking a different result. This lawsuit is nothing more than another one of those attempts by MLG.

To avoid inconsistent judgments, conserve judicial resources and dissuade MLG's forum shopping (as found by Judge Westmore), this case should be transferred to the Southern District of California. Although Judge Sabraw is no longer presiding over *Mosley* and *Penuela*, transfer is still appropriate to avoid inconsistent rulings, conserve the parties' and the Court's resources given that the core issues in the FAC were already decided by the Southern District in *Mosley* and are already fully briefed and remain pending before Judge Cheeks in *Penuela*. Therefore, transfer is appropriate under the First-to-File Rule and under 28 U.S.C. § 1404(a). Accordingly, Wells Fargo requests that the Court transfer this case to the Southern District of California.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

In April 2022, MLG initiated its mass arbitration against Wells Fargo when it initially filed approximately 500 individual arbitration demands with AAA, asserting virtually identical claims under Regulation E. *See* Declaration of Alicia Baiardo ("Baiardo Decl.") ¶ 3. AAA notified the parties on April 22, 2022 that these claims would be subject to a prior version of AAA's Supplementary Rules. *Id.* ¶ 4, n.2. Ms. Wagman-Geller and the plaintiffs in *Mosley* and *Penuela*, are part of the same mass arbitration.[2]

### A.  Ms. Wagman-Geller Agreed to Arbitrate any Dispute with Wells Fargo and, Consistent with That Agreement, Filed an Arbitration Demand

On June 24, 2011, Ms. Wagman-Geller opened a Wells Fargo checking account (the "Account(s)"). Dkt. No. 15, First Amended Complaint ("FAC") ¶ 58; *see also* Declaration of

---

[2] A fulsome discussion of the history of the mass arbitration is contained in Wells Fargo's concurrently filed Motion to Compel Arbitration.

Tiffany Ward ("Ward Decl.") ¶ 2. When Ms. Wagman-Geller opened her Account, she received and agreed to be bound by the terms of Wells Fargo's Deposit Account Agreement (the "Account Agreement"). Ward Decl. ¶ 3, Ex. B. As permitted by Ms. Wagman-Geller's agreement, the terms of her Account Agreement were amended and modified as of the date she filed her arbitration demand. *Id.* ¶ 3. The November 2022 Account Agreement in effect at the time Ms. Wagman-Geller filed her arbitration demand (the "Arbitration Demand") contained provisions requiring arbitration of disputes between Wells Fargo and Ms. Wagman-Geller (the "Arbitration Agreement"). *Id.* at Ex. C at 35-37. The Arbitration Agreement further provided that the arbitration would be administered by the AAA pursuant to its Consumer Arbitration Rules, and that "neither Wells Fargo nor you will be entitled to join or consolidate disputes by or against others as a representative or member of a class, to act in any arbitration in the interests of the general public, or to act as a private attorney general." *Id.*[3]

Pursuant to the November 2022 Account Agreement, on December 30, 2022, Ms. Wagman-Geller filed her Arbitration Demand against Wells Fargo before the American Arbitration Association. Baiardo Decl. ¶ 3, Ex. 2. Ms. Wagman-Geller's Arbitration Demand only alleged a violation of Regulation E, but the demand also discussed theories related to authorized positive, settle negative ("APSN") transactions and assessment of multiple fees on the same returned items ("Multiple Fees"). *Id.* Ms. Wagman-Geller's Arbitration Demand identified that she lived in El Cajon, California—inside the Southern District of California. *See id.*

**B.      MLG launches its Mass Arbitration Campaign against Wells Fargo**

MLG began its mass arbitration campaign long before this lawsuit was filed. This is just the latest in a series of failed attempts to get a result favorable to MLG. Dating back to November 25, 2020, MLG filed a class action complaint on behalf of Mosanthony Wilson ("Wilson") and all others similarly situated, alleging similar Regulation E and California UCL violations as alleged by Ms. Wagman-Geller. *See Wilson v. Wells Fargo & Co.*, No. 3:20-cv-02307-DMS-WVG, (S.D. Cal.

---

[3] The July 2024 Account Agreement, attached to the FAC, contains an identical arbitration provision to the November 2022 Account Agreement. *See* FAC at Ex. C at 35-37.

filed Nov. 25, 2020), at Dkt. No. 1. On May 8, 2021, the court granted Wells Fargo's motion to compel arbitration. *Wilson v. Wells Fargo & Co.*, 2021 WL 1853587, at *2-4 (S.D. Cal. May 10, 2021).[4]

While MLG and Wells Fargo were engaged in the *Wilson* arbitration, MLG initiated a mass arbitration against Wells Fargo, soliciting purported clients online and sending hundreds of arbitration demands in tranches. Baiardo Decl. ¶¶ 3-4, Ex. 3. As of May 28, 2024, MLG had filed a total of 3,965 demands—including Ms. Wagman-Geller's. *Id.* ¶ 5. Thereafter, AAA appointed the Honorable Anita Rae Shapiro to serve as Process Arbitrator for MLG's mass arbitration. *Id.* ¶ 6, Exs. 7-8.

## C.   Wells Fargo Successfully Seeks Relief from MLG's Failure to Perform Diligence into Claimants' Allegations

The demands filed as part of MLG's mass arbitration campaign (including Ms. Wagman-Geller's) were virtually identical, and it soon became clear that MLG was not performing reasonable due diligence to confirm that claimants were (1) Wells Fargo customers, (2) had enrolled in DCOS (a pre-requisite to bringing their claims) or (3) had incurred any overdraft fees subject to Regulation E. Baiardo Decl. ¶¶ 5, 8. In fact, Wells Fargo's preliminary review of the demands indicated that many claimants were unable to provide Wells Fargo account numbers or, if they could, they had never even agreed to participate in the DCOS. *Id.* ¶¶ 8-9, Ex. 10. As a result, Wells Fargo asked the Process Arbitrator to require MLG to provide basic information in the demands it was filing so that Wells Fargo could adequately defend itself. *Id.* ¶¶ 11-13, Ex. 13. The Process Arbitrator entered an order partially granting Wells Fargo's request by requiring each claimant in MLG's mass arbitration to provide certain basic facts to establish a colorable Regulation E claim against Wells Fargo and ordering each claimant to file an amended demand for all claims filed before October 27, 2022, and likewise ordering that all future demands comply with these basic filing requirements (the "October 27 PA Order"). *Id.* ¶ 14, Ex. 16.

---

[4] Following a hearing on the merits of Wilson's claims, on July 14, 2022, the arbitrator issued a final award fully in favor of Wells Fargo. *See Wilson v. Wells Fargo & Co.*, 2022 WL 4125220, at *1-3 (S.D. Cal. Sept. 9, 2022).

1

2

### D.    The Southern District of California Denied MLG's Attempt to Avoid the October 27 PA Order, and the Ninth Circuit Affirms

3       Rather than abide by this order, on December 13, 2022, MLG filed a complaint to have the

4    October 27 PA Order overturned in the United States District Court for the Southern District of

5    California. *See Mosley* at Dkt. No. 1 ("*Mosley* Complaint"). The *Mosley* Complaint was filed on

6    behalf of just four claimants from MLG's mass arbitration. *See Mosley* Complaint at ¶¶ 16-19. The

7    *Mosley* Complaint alleged that Wells Fargo had breached the *Mosley* plaintiffs' Arbitration

8    Agreements because, by virtue of the October 27 PA Order, Wells Fargo had failed to provide each

9    plaintiff the individual arbitrations required by the Arbitration Agreements. *See id.* at ¶¶ 79-91; *see,*

10   *e.g., Mosley* at Dkt. No. 13-1 at 4-5; *Mosley* at Dkt. No. 25 at 7. The *Mosley* plaintiffs argued that

11   they were no longer bound by their agreements to arbitrate. *See Mosley* Complaint at ¶¶ 79-91.

12      Wells Fargo moved for an order compelling the *Mosley* plaintiffs back to arbitration, which

13   the district court granted on May 1, 2023. *Mosley v. Wells Fargo & Co.*, 2023 WL 3185790, at *3-

14   5 (S.D. Cal. May 1, 2023) [hereinafter, the "*Mosley* DC Order"]; *see also Mosley* at Dkt. Nos. 21,

15   21-1 ("*Mosley* MTC"). On May 26, 2023, MLG appealed the *Mosley* DC Order to the Ninth Circuit

16   Court of Appeals. Baiardo Decl. ¶ 26; *Mosley* at Dkt. No. 31. The Ninth Circuit affirmed the *Mosley*

17   DC Order. *Mosley* Appellate Order, 2024 WL 977674, at *1-3. The Ninth Circuit held that the

18   October 27 PA Order was a non-final order not subject to judicial review because "[n]o claimant

19   ha[d] yet won or lost a claim against Wells Fargo; an arbitration award ha[d] not been given." *Id.*

20   at *1. The Ninth Circuit also found that "Claimants ha[d] refused to comply with information

21   requests from Wells Fargo after months of arbitration and a PA Order and now [sought] to

22   circumvent the [October 27] PA Order in federal court." *Id.* The Ninth Circuit noted that although

23   case law permits courts to decline to compel arbitration where one party defaults or entirely refuses

24   to cooperate in arbitration, Wells Fargo did not do so. *Id.* Instead, the Ninth Circuit held that "Wells

25   Fargo did not act improperly or otherwise breach the agreement." *Id.* "In fact, Wells Fargo simply

26   sought information establishing that each Claimant had a ***legitimate dispute*** with them. Wells

27   Fargo complied with the Arbitration Agreement and paid more than half a million dollars in arbitration

28   fees over several months of arbitration before Claimants filed their case in federal court." *Id.*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER

(emphasis added).

**E.    MLG Seeks a Second Bite at the Apple by Filing Another Challenge to the October 27 PA Order with New Plaintiffs in a New Court, the Northern District of California**

On February 8, 2024, MLG filed a second complaint challenging the October 27 PA Order, this time on behalf of four new plaintiffs pulled from the pool of individual claimants in the mass arbitration, and now in the Northern District of California. *Penuela* at Dkt. No. 1. Following the Ninth Circuit's order, MLG filed an amended complaint, asserting the same allegations that claimants were "shut out of the arbitration process" based on Wells Fargo's conduct and the Process Arbitrator's orders. *Penuela* at Dkt. No. 14 at ¶¶ 13, 14 [hereinafter "*Penuela* FAC"]. The *Penuela* plaintiffs alleged that Wells Fargo falsely represented AAA's neutrality to induce consumers to accept arbitration, but that "consumers did not get the quick and efficient individualized process Wells Fargo promised" due to the Process Arbitrator's orders, including the October 27 PA Order. *Penuela* FAC at ¶¶ 10–14

Wells Fargo filed a motion to transfer the action to the Southern District of California, as well as a motion to compel arbitration. *Penuela* at Dkt. Nos. 19, 20. In its motion to transfer, Wells Fargo argued that transfer was appropriate under the First-to-File Rule because "plaintiffs in both actions seek to invalidate the Process Arbitrator's procedural orders," and that transfer was also warranted under 28 U.S.C. § 1404 to dissuade MLG's forum shopping. *Penuela* at Dkt. No. 19.

**F.    While MLG's Appeal of the *Mosley* DC Order was Pending, MLG Continue to Raise the Same Procedural Challenges before the AAA**

**1.    MLG could not comply with October 27 PA Order for the vast majority of its claimants.**

On June 14, 2023, while the *Mosley* appeal was pending, the Process Arbitrator entered an order (the "June 14 PA Order") enforcing the October 27 PA Order, setting deadlines of August 14, 2024, and September 13, 2024, for MLG and claimants to comply with the October 27 PA Order. Baiardo Decl. ¶ 26, Ex. 32. While attempting to comply with the June 14 PA Order, MLG conceded that it could not provide the basic information required by the October 27 PA Order for 2,389

claimants, and that 1,635 of claimants did not have and could never have had the Regulation E claim they asserted against Wells Fargo. *Id.* ¶ 33, Ex. 43. On January 10, 2024, the Process Arbitrator entered an order dismissing without prejudice the 3,503 claimants who had failed to meet the AAA filing requirements in the October 27 PA Order (the "January 10 PA Order"). *Id.* ¶ 39, Ex. 50.

> **2.      The remaining claimants move forward to individual merit arbitrations.**

For the 432 claimants who did meet the filing requirements of the October 27 PA Order, including Ms. Wagman-Geller, AAA moved forward with administering their individual merit arbitrations. Baiardo Decl. ¶ 40, Ex. 51. On April 17, 2024, AAA began appointing arbitrators for the first 187 individual claimant arbitrations. *Id.* ¶ 48. Ms. Wagman-Geller was not one of the 187 claimants assigned an arbitrator. *Id.* AAA then began scheduling preliminary management conferences ("PMC") for individual arbitrations of claimants for whom an arbitrator had been confirmed. *Id.* ¶ 49. At the PMCs, the parties provided background to the merit arbitrators on the procedural posture of the claimant's cases and the orders entered by the Process Arbitrator. *Id.* ¶ 50. MLG voiced challenges to the procedure before the AAA, including requests for Wells Fargo to produce certain documents, expanding the scope of information Wells Fargo should provide on each individual claimant, and raising challenges to whether individual claimants should be required to appear at depositions and final hearings in person. *Id.* ¶¶ 49-50. The merit arbitrators entered scheduling orders based on the arguments set forth at the PMCs and any subsequent briefing that was ordered. *Id.* ¶ 51, Exs. 68-71.

> **3.      MLG suspends claimants' participation in their individual merit arbitration proceedings.**

On July 12, 2024, MLG submitted a letter to AAA's administration entitled "Notice of Claimants' Suspension of Participation" (the "July 12 Notice"). *Id.* ¶ 55, Ex. 74. The July 12 Notice stated claimants' "intent to suspend participation in further AAA proceedings unless substantial changes are made to the arbitration proceedings." *Id.* MLG's arguments were based, in part, on issues surrounding the Process Arbitrator's January 10 PA Order and their alleged impact on the arbitration process (*i.e.* increased costs, delay, etc.). *See id.* §§ II.(a)-(f), III.

On July 22, 2024, AAA provided the parties with dispute resolution options, but noted that the parties had to mutually agree to any such option. *Id.* ¶ 57, Ex. 76. Otherwise, AAA would continue to administer the cases as it had been, as "AAA has no authority to alter arbitrators' orders or to require certain discovery processes." *Id.* The parties met and conferred but were not able to come to any agreement. *Id.* ¶ 58, Ex. 77. As a result, on August 8, 2024, AAA notified the parties that it would continue its administration of the individual arbitrations and directed the parties to raise their requests with the merit arbitrator appointed to each case. *Id.*

### 4. MLG refuses to participate in arbitrations and voluntarily dismisses claimants' individual claims.

Thereafter, AAA continued to administer the individual arbitrations. On August 23, 2024, MLG sent an email to AAA stating that it would "continue to stand by" the July 12 Notice, "hope[d]" that AAA had notified the assigned arbitrators of its position, and that it was "actively consulting with" its clients "regarding this situation" and would "provide an update once those conversations concluded." *Id.* ¶ 59, Ex. 78. Wells Fargo began reaching out to the merit arbitrators requesting an order for a status conference that required the presence of the claimant. *Id.* ¶ 60, Ex. 79. Prior to any status conferences taking place, on the evening of September 25, 2024, MLG began submitting notices of voluntary dismissals on behalf of claimants that had been assigned a merit arbitrator. *Id.* ¶ 64, Ex. 83. On September 26, 2024, MLG submitted a notice of voluntary dismissal for all claimants who had not yet been assigned merit arbitrators, including Ms. Wagman-Geller. *Id.* ¶ 64, Ex. 84. On September 26, 2024, MLG filed this lawsuit, launching the same attacks on the procedure before the AAA, including the requirements of the October 27 PA Order, that it challenged in both *Mosley* and *Penuela*.

### G. Judge Westmore Grants Wells Fargo's Motion to Transfer, Transferring *Penuela* to the Southern District of California

On November 6, 2024, Judge Westmore granted Wells Fargo's motion to transfer *Penuela*, determining that transfer was appropriate under the First-to-File Rule because both actions involved "similar claims on behalf of a similar group of plaintiffs, and both actions seek to avoid arbitration and the requirements of the Process Arbitrator Order." *Penuela* at Dkt. No. 32 [hereinafter "*Penuela*

Transfer Order"] at 4-5. Judge Westmore also found that transfer was appropriate under § 1404, because there was a "clear indication of forum shopping" evidenced by the fact that "Plaintiffs' counsel has already litigated the same issue in the Southern District of California." *Id.* at 6. Upon transfer, *Penuela* was assigned to Judge Dana Sabraw, the same judge who presided over the *Mosley* litigation and issued the order compelling arbitration. *Id.* at Dkt. No. 38. Subsequently, both *Mosley* and *Penuela* were transferred to Judge Cheeks. *Penuela* at Dkt. No. 40; *Mosley* at Dkt. No. 38. Wells Fargo's motion to compel arbitration in *Penuela* remains pending before Judge Cheeks. *Penuela* at Dkt. No. 20.

## III.    ARGUMENTS & AUTHORITIES

The First-to-File Rule applies here and, in the interest of preserving judicial resources and minimizing the risk of inconsistent judgments, the case should be transferred to Judge Cheeks in the United States District Court for the Southern District of California. *Mosley* and *Penuela* pre-date this action, and the plaintiffs' core theory in all three cases is identical—that the mass arbitration claimants are no longer bound by their agreements to arbitrate because of the Process Arbitrator's orders and Wells Fargo's conduct in the underlying mass arbitration.

Transfer is also warranted under 28 U.S.C. § 1404(a) because this lawsuit could have been brought in the Southern District of California and because transfer will serve the interests of justice by dissuading MLG's blatant forum shopping.

### A.    Transfer under the First to File Rule is Warranted

Under the First-to-File rule, a court may "dismiss, stay, or transfer a case if a similar case with substantially similar issues and parties was previously filed in another district court." *Puentes v. Amazon.com Servs., LLC*, 2021 WL 5984867, at *2 (C.D. Cal. Sept. 30, 2021) (quoting *Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015)). The purpose of the rule is to "minimize the risk of inconsistent judgments, conserve judicial resources and allow discovery to be managed by a single court." *Jia v. Weee! Inc.*, 2024 WL 218121, at *3 (N.D. Cal. Jan. 19, 2024) (citation omitted). In determining whether to invoke the First-to-File Rule, courts evaluate three factors: (1) the chronology of actions; (2) the similarity of the parties; and (3) the similarity of the issues. *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, 2014 WL

5422631, at *2 (N.D. Cal. Oct. 24, 2014). Transfer to the Southern District of California is appropriate under the First-to-File Rule because each of the relevant factors weighs heavily in support of transfer.

### 1. Chronology favors transfer.

Both *Mosley* and *Penuela* were filed well before MLG filed this lawsuit, so this factor favors transfer. *Serv. Emps. Int'l Union*, 2014 WL 5422631, at *2. ("If the action in the transferee court was filed prior to the action pending before the transferor court, then this factor supports transfer.").

### 2. Similarity of the parties favors transfer.

The similarity of the parties also favors transfer. This factor "is satisfied if some [of] the parties in one matter are also in the other matter, regardless of whether there are additional, unmatched parties in one or both matters." *Serv. Emps. Int'l Union*, 2014 WL 5422631, at *2 (citation omitted). "In the class action context, most district courts in this circuit compare the putative classes rather than the named plaintiffs." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 705 (N.D. Cal. 2021) (citation omitted). Courts do not condone gamesmanship or attempts to "skirt" the rule by using different parties and will apply the First-to-File Rule if it will encourage fairness and judicial efficiency. *See Kohn Law Grp., Inc.*, 787 F.3d at 1240. As Judge Westmore concluded, there is similarity of the parties because plaintiffs in all three actions "are subject to the same arbitration agreements with Wells Fargo, are claimants in the same arbitration proceedings, and are subject to the same Process Arbitrator Order." *Penuela* Transfer Order at 4.

Further, Wells Fargo is a defendant in all three actions and the proposed classes in this lawsuit are broader and completely subsume the proposed classes in *Penuela*. *See, e.g.,* FAC at ¶ 113 (Regulation E class consists of all Wells Fargo customers who were "assessed an overdraft fee on a one-time debit card or ATM transaction beginning one-year preceding the filing of the first arbitration demand"); *Penuela* FAC at ¶ 134 (Regulation E class consists of Wells Fargo customers who were "assessed an overdraft fee on a onetime debit card or ATM transaction beginning one-year preceding the filing of the first individual arbitration demand . . . and whose claims have been dismissed from arbitration without a substantive hearing, or have not yet filed their claim in

DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER

arbitration.").[5] In fact, the *Penuela* and *Mosley* proposed class plaintiffs all fall within the proposed classes here.[6] As in *Young*, the Court should consider the overlap of the putative classes, as opposed to the individualized named plaintiffs, in evaluating the similarity of the parties for purposes of this motion. 526 F. Supp. 3d at 705. The parties in this action are substantially similar because the same defendant is involved in each case and because the proposed classes significantly overlap with one another.

In addition, the plaintiffs in this case, *Mosley*, and *Penuela* share substantially the same interests. MLG is trying to avoid the order in *Mosley* and the Ninth Circuit's decision regarding the same. All three sets of plaintiffs are subject to the same arbitration agreements, are all participants in the same mass arbitration, and are all subject to the same Process Arbitrator orders and AAA's process for handling the individual arbitrations in MLG's mass arbitration forming the basis for MLG's attempts to circumvent arbitration. MLG is once again simply picking a "new" claimant to serve as a plaintiff for their attempt to escape arbitration. Transfer is warranted to minimize the risk of inconsistent holdings and to discourage MLG's gamesmanship. *See Johnson v. Siemens Indus., Inc.*, 2023 WL 4686015, at *3 (N.D. Cal. July. 21, 2023) (First-to-File rule properly invoked where counsel appeared to engage in forum shopping by "fil[ing] essentially the same complaint, previously found insufficient, in a new venue"); *see also Penuela* Transfer Order at 4-5.

### 3.    Similarity of the issues favors transfer.

Under the third factor, courts assess "the similarity of the issues between the two cases." *Serv. Emps. Int'l Union*, 2014 WL 5422631 at *3. "The issues in both cases also need not be identical, only substantially similar ... [to] determine whether two suits involve substantially similar issues, we look at whether there is 'substantial overlap' between the two suits." *Kohn Law Grp., Inc.*, 787 F.3d at 1240-41. The key inquiry is "whether the core theory for both cases is the

---

[5] The Breach of Contract class and UCL classes here likewise completely subsume the *Penuela* Breach of Contract and UCL classes. *See* FAC at ¶ 113; *Penuela* FAC at ¶ 134.

[6] *See* FAC at ¶ 113 (identifying respective classes as consisting of Wells Fargo customers); *Penuela* FAC at ¶ 1(Wells Fargo customers asserting UCL and Regulation E claims); *Mosley* Comp. at ¶¶ 13 – 16 (Wells Fargo customers asserting Regulation E and UCL claims).

same." *Weee! Inc.*, 2024 WL 218121 at *3 (citation omitted). Here, Ms. Wagman-Geller's core theories are the same as those set forth in *Mosley* and in *Penuela*.

The dispute in all three cases comes down to the same issue—whether the plaintiffs can avoid arbitration, circumvent rules and procedural decisions in arbitration, and proceed in federal court. *See Penuela* Transfer Order at 5 (explaining that the underlying issue in both *Penuela* and *Mosley* is whether "the parties must go to arbitration" and specifically "whether Plaintiffs must comply with the Process Arbitrator Order."); FAC at ¶ 25 (asserting that class members have been subjected to "an unfair process" in arbitration and "should be allowed to proceed with those claims in court.").

In *Mosley*, MLG sought to avoid arbitration by arguing that Wells Fargo's actions within the mass arbitration allowed the *Mosley* plaintiffs (and MLG's other claimants) to ignore the Process Arbitrator's procedural, interim orders related to the filing requirements necessary to move forward with individual arbitrations within the mass arbitration. *See Mosley* Complaint. The Ninth Circuit foreclosed this issue, holding that the October 27 PA Order is "not subject to judicial review" and explaining that "[i]t is well-settled that questions of procedure relating to arbitration are outside the purview of federal courts." *Mosley* Appellate Order, 2024 WL 977674, at *1. The Ninth Circuit also confirmed that "Wells Fargo did not act improperly or otherwise breach the agreement," because "Wells Fargo simply sought information establishing that each Claimant had a legitimate dispute with them." *Id.* at *2. Rather, it was MLG and claimants that "refused to comply with information requests from Wells Fargo after months of arbitration and a PA Order ***and now seek to circumvent the [October 27] PA Order in federal court***." *Id.* at *1.

The *Penuela* plaintiffs repackaged these arguments, and Judge Westmore rightly concluded the issues were substantially similar because "[b]oth cases assert violations of Regulation E" and "both cases challenge the arbitration proceedings and the Process Arbitrator Order." *Penuela* Transfer Order at 4. Judge Westmore concluded that transfer under the First-to-File Rule was warranted because it would "be more efficient for the same court" to grapple with "the underlying issue of whether the parties must go to arbitration." *Id.* at 5. Judge Westmore also rejected the argument that the *Mosley* and *Penuela* plaintiffs were in different positions, explaining that the

1  "fundamental issue" for both cases was the same: "whether Plaintiffs must comply with the Process

2  Arbitrator Order." *Id.*

3      MLG—through Ms. Wagman-Geller—recycles these failed arguments in another attempt

4  to avoid arbitration and proceed in court. Although Ms. Wagman-Geller now adds a fraud in the

5  inducement claim, the heart of this claim is still a challenge to the arbitration process. MLG's

6  complaints in *Mosley*, *Penuela*, and to the AAA itself, have always focused on the allegedly unfair

7  arbitration process employed by AAA. *See Penuela* FAC at ¶12 (complaining that "consumers did

8  not get the quick and efficient individualized process Wells Fargo promised"); *Mosley* Compl. at

9  ¶¶ 3, 4 (alleging that "Wells Fargo feeds consumers through the arbitration meat-grinder," contrary

10  to their contractual promises). It is this allegedly unfair process that led MLG to voluntarily

11  withdraw from the arbitrations before immediately filing this lawsuit. *See* Baiardo Decl. ¶ 55, Ex.

12  74. Plaintiff's fraud in the inducement claim repeats these procedural complaints, alleging that

13  Wells Fargo and AAA colluded to create a "difficult, time-consuming, and expensive" arbitration

14  process that meant "consumers effectively have no means to actually arbitrate their claims." FAC

15  at ¶ 133. The fraud in the inducement claim is just another attack on the arbitration process, and it

16  repeats the core theory MLG used in *Penuela* and *Mosley*. *See Penuela* FAC at ¶¶ 9-14, 101-131;

17  *Mosley* Compl. at ¶¶ 1-5, 8, 22, 82, 86. Indeed, Plaintiff's collusion arguments are identical to those

18  made by the plaintiffs in *Penuela*. *Compare* FAC ¶ 56 *with Penuela* FAC ¶ 113.

19      This lawsuit is MLG's third, and most transparent, attempt to avoid procedural decisions

20  within MLG's mass arbitration campaign by seeking a different result in a different court. The

21  Court should dissuade MLG's blatant forum shopping and transfer this case as is appropriate. *See*

22  *Weee! Inc.*, 2024 WL 218121 at *3 (First-to-File Rule applied because the plaintiffs' core

23  allegations in the two cases were identical and transfer would promote judicial efficiency, lower

24  the danger of inconsistent holdings, and permit discovery to be controlled by one court).

25      **B.    Transfer is Also Appropriate Under § 1404(a)**

26      A district court may also transfer the venue of an action "[f]or the convenience of parties

27  and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). "A motion for transfer lies within the

28  broad discretion of the district court, and must be determined on an individualized basis." *Keene v.*

*McKesson Corp.*, 2015 WL 9257949, at \*2 (N.D. Cal. Dec. 17, 2015). In determining whether to transfer venue under § 1404(a), courts utilize a two-part test: the moving party must "demonstrate jurisdiction and proper venue would exist in the [transferee] court and that the balance of conveniences favors transfer." *Southard v. Kipper Tool Co.*, 2023 WL 6959145, at \*3 (N.D. Cal. Oct. 19, 2023).

Transfer under § 1404(a) is appropriate here because the two-factor test is met. This case could have been brought in the Southern District of California and balancing the relevant factors clearly demonstrates that it is more convenient to the parties to litigate this action in the Southern District of California.

> **1.    This action could have been brought in the Southern District of California.**

Under § 1404(a), Wells Fargo must demonstrate that both jurisdiction and venue are proper in the transferee district. *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833 (N.D. Cal. 2018). The Southern District of California would have subject matter jurisdiction over this action under 28 U.S.C. § 1331 (claims arising under the laws of the United States) and 28 U.S.C. § 1367(a) (supplemental jurisdiction). Venue is also appropriate under 28 U.S.C. § 1391(b)(2) because Wells Fargo conducts business and enters into contracts in the Southern District of California, and because Ms. Wagman-Geller entered into her DAA with Wells Fargo in the Southern District of California (Ward Decl. ¶ 2) and resides in the Southern District of California. 28 U.S.C. § 1391(b)(2) (venue is appropriate in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.").

> **2.    The convenience of the parties and the interests of justice favor transfer.**

In determining whether the convenience to the parties or the interests of justice support transfer, Ninth Circuit courts may consider eight different factors: "(1) plaintiff's choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time of trial in each forum." *Clarke v. Kraft Heinz Co.*, 2021 WL 4079176, at \*1 (N.D. Cal. Sept. 8, 2021)

1    (citation omitted). In assessing these factors, the "predominant consideration" is the interest of

2    justice. *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1026 (N.D. Cal. 2020) (citation

3    omitted). Balancing these factors demonstrates that transfer is appropriate because four factors

4    clearly support transfer, while no factor weighs against transfer.

5                    **a)     *Plaintiff's choice of forum suggests she is engaging in forum***

6                    ***shopping and supports transfer.***

7                    Although plaintiffs' choice of forum is *generally* afforded substantial weight, there are

8    exceptions. *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001). Less deference is

9    due if the plaintiff does not reside in the chosen venue, the relevant conduct occurred elsewhere, or

10   when the plaintiff brings an action on behalf of a class. *Mays v. Wal-Mart Stores, Inc.*, 2018 WL

11   1400468, at *3 (N.D. Cal. Mar. 19, 2018). Most importantly, the deference given to a plaintiff's

12   choice of forum "is substantially reduced where the plaintiff does not reside in the venue" or if there

13   is "any indication" of forum shopping. *Bowman*, 157 F. Supp. 2d at 1106 (citation omitted). In fact,

14   evidence of forum shopping alone may support transfer. *See Kurtz v. Intelius, Inc.*, 2011 WL

15   4048645, at *2-3 (E.D. Cal. Sept. 9, 2011) (transfer appropriate where the plaintiffs sought "to get

16   around an adverse ruling by finding new named Plaintiffs and filing in a different district."); *Meza*

17   *v. Procter & Gamble Co.*, 2023 WL 3267861, at *6 (C.D. Cal. Apr. 27, 2023) (collecting cases)

18   (transfer under Section 1404 was appropriate to "serve as a useful deterrent to Plaintiff's forum

19   shopping.").

20                   First, it appears Ms. Wagman-Geller is not a resident of this district (her last known

21   residency is within the Southern District of California)[7], and she brings claims on behalf of

22   proposed nationwide classes. As such, her choice is due less deference. *See Wal-Mart Stores, Inc.*,

23

---

24   [7] Ms. Wagman-Geller's demand for arbitration lists a home address in El Cajon, CA, and her account

25   application with Wells Fargo identifies a home address in San Diego, CA, both of which are in the
     Southern District of California. *See* Ward Decl. ¶ 2, Ex. A; Baiardo Decl. ¶ 3, Ex. 2. The Court

26   should note that it appears that Mr. Baciglupi was also not a resident of this district (his demand for
     arbitration and his account application with Wells Fargo include a home address is in Stockton,

27   California, which is located within the Eastern District of California). *See* Baiardo Decl. ¶ 70, Ex.

28   90; Ward Decl. ¶ 4.

---

2018 WL 1400468, at *3 (less deference to the plaintiff's choice of forum was owed because the plaintiff resided in Los Angeles and brought the action on behalf of a class).

Second, as Judge Westmore concluded in *Penuela*, "there is clear indication of forum shopping," given that MLG "has already litigated the same issue in the Southern District of California," but brought another case in a different district "making similar claims and arguments" trying to avoid procedural decisions made in MLG's mass arbitration, including the Process Arbitrator Orders, after Judge Sabraw issued an unfavorable ruling. *Penuela* Transfer Order at 6. This is MLG's second follow-on action in the Northern District of California after being compelled to arbitrate on the same facts by the Southern District of California and the Ninth Circuit. This is a transparent attempt to avoid those orders. Viewing the totality of MLG's conduct, it is clear MLG is still trying to circumvent the procedural rulings made in its mass arbitration and pursue the same legal theories in this case that were foreclosed by decisions in the Southern District of California and the Ninth Circuit. *See Baker v. Meiling*, 2020 WL 6743585, at *3 (C.D. Cal. Sept. 11, 2020) (Plaintiffs' forum choice was "not entitled to significant weight" where counsel's conduct suggested it was trying to avoid litigation in the District of Nevada).[8] Ms. Wagman-Geller's choice of forum makes clear that MLG is forum shopping, and transfer is appropriate.

**b)** ***Judicial efficiency favors transfer.***

"In determining whether the interests of justice favor transfer, courts look primarily at considerations of judicial economy." *Clarke v. Kraft Heinz Co.*, 2021 WL 4079176, at *2 (N.D. Cal. Sept. 8, 2021) (citation omitted). Under the judicial efficiency factor, courts ask "whether a trial may be speedier in another court because of a less crowded docket." *Martin v. Global Tel*Link Corp.*, 2015 WL 2124379, at *6 (N.D. Cal. May 6, 2015) (citation omitted). Courts compare the "median time from filing to disposition or trial." *Id.* Courts will also evaluate the risk of inconsistent

---

[8] Forum shopping can "reasonably be inferred if the plaintiff files the same or similar case represented by the same law firm in a different district after receiving unfavorable rulings there." *LegalForce, Inc. v. Legalzoom.com*, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018). Thus, the forum shopping analysis does not necessarily depend on whether the plaintiff is seeking to avoid a specific judge. *See id.* at *4 ("LegalForce's actions indicate forum-shopping. LegalForce filed its claims in this district after receiving unfavorable rulings in the Northern District.").

rulings and whether another judge is more familiar with the case, potentially saving time and resources. *See Vital Pharms. Inc. v. Monster Energy Co.*, 2020 WL 6162796, at \*3 (C.D. Cal. Aug. 27, 2020) (transfer warranted where a different judge's familiarity would "save time and effort" and "reduce the likelihood of inconsistent rulings."); *Intelius, Inc.*, 2011 WL 4048645, at \*2 ("judicial resources are conserved when an action is adjudicated by a court that has already committed judicial resources to the contested issues and is familiar with the facts of the case.") (citation omitted).

According to the Federal Court Management Statistics published by the Administrative Offices of the United States Courts, the average filing to trial time for civil cases in the Northern District of California during the 12-month period ending on September 30, 2024 (the last available statistics) was 47.9 months.[9] The average time to trial for the Southern District of California was 31.9 months. This lawsuit could go to trial faster in the Southern District, so this factor favors transfer.

And as discussed above, there is substantial overlap between this case, *Mosley*, and *Penuela*, as Ms. Wagman-Geller is again seeking to avoid arbitration and procedural decisions made in MLG's mass arbitration based on substantially identical facts and arguments. Given that the core relief sought here has already been extensively litigated and decided by the Southern District of California and Ninth Circuit, and will be litigated again in *Penuela*, this Court can conserve substantial time and resources simply by transferring this action to the Southern District of California. *See Ctr. for Medical Progress v. Becerra*, 2020 WL 7786536, at \*5 (C.D. Cal. Nov. 12, 2020) (transfer would serve judicial efficiency where the Judge in the transferee district was "more familiar . . . with the underlying factual contentions" and it would take significant time and resources for the transferor court "to reach a similar level of familiarity") (citation omitted).

### c)    *Feasibility of consolidation favors transfer.*

"The feasibility of consolidation is a significant factor in a transfer decision, and even the

---

[9] *Federal Court Management Statistics: September 2024 Report*, Administrative Office of the U.S. Courts at 9 (last accessed February 13, 2025) https://www.uscourts.gov/sites/default/files/2024-12/fcms_na_distcomparison0930.2024.pdf

pendency of an action in another district is important because of the positive effects it might have in possible consolidation of discovery and convenience to witnesses and parties." *Cardoza v. T–Mobile USA Inc.*, 2009 WL 723843, at *5 (N.D. Cal. Mar. 18, 2009). This factor favors transfer when it "is possible that some or all of these cases may ultimately be consolidated and/or related if this case is transferred." *Martin*, 2015 WL 2124379 at *5. As explained above, there is substantial overlap between these cases, and *Penuela* was assigned to Judge Cheeks. *See Penuela* at Dkt. No. 40. If transferred, this case would likely be related or transferred to Judge Cheeks under the Southern District's local rules. *See* S.D. Cal. L.R. 40.1(e) & (f). This factor favors transfer.

**d)    *Local interest does not weigh against transfer.***

Under the local interest factor, courts consider "the local interest in having localized controversies decided at home." *Baker v. Bayer Healthcare Pharms. Inc.*, 2015 WL 4456085, at *3 (N.D. Cal. July 21, 2015). Courts will consider where the defendant does business and where the relevant events occurred. *See id.* (local interest factor was neutral where defendant conducted business "throughout the state of California," the product at issue was located in all three potential venues, and the plaintiff allegedly suffered injuries in California and Indiana). Courts also consider the residency of the plaintiffs. *Ctr for Biological Diversity v. McCarthy*, 2015 WL 1535594, at *5 (N.D. Cal. Apr. 6, 2015) (local interest factor favored transfer even though both plaintiffs resided in the Northern District, because the conduct at issue occurred in other districts). As shown above, Ms. Wagman-Geller resides in the Southern District of California. Baiardo Decl. ¶ 3, Ex. 2; Ward Decl. ¶ 2, Ex. A. Thus, Plaintiff's residence favors transfer to the Southern District. Further, while Wells Fargo conducts business in both the Southern and Northern Districts, and the relevant conduct at issue occurred in Southern District. The Northern District does not have a "unique interest" in litigating these claims when compared to the Southern District. This factor at best is neutral, and may even favor transfer.

**e)    *Convenience of the parties weighs in favor of transfer.***

The convenience of the parties factor favors transfer if the parties are already litigating a similar action in the transferee district. *Martin*, 2015 WL 2124379, at *4 ("The Central District will be a more convenient forum for the defendant, because it is already litigating three similar lawsuits

there."); *Fitbit, Inc. v. Koniklijke Philips N.V.*, 336 F.R.D. 574, 587 (N.D. Cal. 2020) (convenience of the parties favored transfer where both parties had connections to the transferor and transferee district, but the pending actions in Massachusetts meant the parties could "avoid wasting resources litigating in different judicial districts"). MLG already demonstrated that the Southern District of California is at least an equally convenient place for the parties when it filed *Mosley* in that district. *See Martin*, 2015 WL 2124379, at *4 ("Even though the plaintiff resides in this District, his initial selection of the Southern District undercuts his argument that he considers the Northern District a more convenient forum—and suggests his interest in maintaining the lawsuit here may instead be due to strategic considerations.").

MLG and Wells Fargo are already litigating *Penuela* in the Southern District of California, so it would be more convenient for the parties to also litigate this case in that district. *See Kudsk v. Bara Infoware, Inc.*, 2019 WL 2775573, at *4 (N.D. Cal. July 2, 2019) ("The convenience of the parties and interests of judicial economy weigh in favor of resolving all of these claims together at once.").

### f)    *The remaining factors are neutral.*

The remaining factors are neutral. The bulk of the evidence in this litigation will likely be in electronic form, so this factor is neutral. *Martin*, 2015 WL 2124379, at *5 (explaining that this factor is "is neutral or carries only minimal weight when the evidence is in electronic form."). The Southern and Northern District of California will be equally familiar with the applicable law in this case, so this factor is neutral. *Bhatia v. Silvergate Bank*, 2023 WL 4937325, at *8 (N.D. Cal. Aug. 1, 2023) (holding that "both forums are federal courts located in California equally familiar with California and federal law."). The convenience of the witnesses factor is likewise neutral. The most important consideration is the convenience for non-party witnesses. *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746, 762–63 (C.D. Cal. 2016). The convenience of a "litigant's employee witnesses" will be given minimal weight. *Martin*, 2015 WL 2124379, at *4. It is not clear what, if any, third party witnesses may give testimony in this action. Any witnesses who may eventually provide testimony will likely reside all over the country. As such, the convenience interests of third-party witnesses are not implicated.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER

1    In sum, four factors weigh in favor of transfer and no factors weigh against transfer. The

2    Court should transfer this case to the Southern District of California. *See Heredia v. Sunrise Senior*

3    *Living, LLC*, 2018 WL 5734617, at *7 (N.D. Cal. Oct. 31, 2018) (granting motion to transfer under

4    § 1404 where two factors weighed in favor of transfer and only one factor weighed against transfer).

5    **IV.    CONCLUSION**

6    Wells Fargo respectfully requests the Court grant its Motion Transfer for all the foregoing

7    reasons and transfer the case to the United States District Court for the Southern District of

8    California.

9

10   DATED: February 14, 2025                **MCGUIREWOODS LLP**

11

12                                    By:   */s/ Alicia A. Baiardo*
                                           _____
13                                         Alicia A. Baiardo
                                           Amy Morrissey Turk (*pro hac vice granted*)
14                                         Todd J. Dressel

15                                         Attorneys for Defendants Wells Fargo & Co. and
                                           Wells Fargo Bank, N.A.
16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2025, I electronically filed the foregoing document entitled **DEFENDANTS' NOTICE OF MOTION AND MOTION TO TRANSFER** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo