**MCGUIREWOODS LLP**
Alicia A. Baiardo SBN #254228
abaiardo@mcguirewoods.com
Todd J. Dressel SBN #220812
tdressel@mcguirewoods.com
Two Embarcadero Center
Suite 1300
San Francisco, CA 94111-3821
Telephone: 415.844.9944
Facsimile: 415.844.9922

Amy Morrissey Turk (*pro hac vice granted*)
aturk@mcguirewoods.com
101 West Main Street, Suite 9000
Norfolk, VA 23510
Telephone: 757.640.3700

*Attorneys for Defendants*
*Wells Fargo Bank, N.A. and Wells Fargo and Company*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A., WELLS FARGO & CO, AMERICAN ARBITRATION ASSOCIATION, INC., and DOES 1 through 5, inclusive,<br><br>Defendant. | CASE NO. 3:24-cv-06778-SK<br><br>The Hon. Magistrate Judge Sallie Kim<br><br>**DEFENDANTS WELLS FARGO BANK N.A. AND WELLS FARGO & CO'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT**<br><br>Courtroom C<br>Hearing Date: April 14, 2025<br>Hearing Time: 9:30 a.m.<br><br>First Amended Complaint Filed: January 31, 2025 |

DEFENDANTS WELLS FARGO BANK N.A. AND WELLS FARGO & CO'S MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE THAT on April 14, 2025, at 9:30 a.m., or as soon thereafter as the matter can be heard in Courtroom C of the above-entitled Court, located at 450 Golden Gate Ave., San Francisco, CA 94102, Defendants Wells Fargo & Company and Wells Fargo Bank N.A., (together, "Wells Fargo"), will, and hereby do, move the Court for (1) an order compelling Plaintiff Marlene Wagman-Geller ("Plaintiff" or "Ms. Wagman-Geller") to arbitrate her claims against Wells Fargo, on an individual basis only, pursuant to the terms of the applicable arbitration agreement between her and Wells Fargo and dismissing the case without prejudice; or, in the alternative, (2) an order dismissing Plaintiff's claims (the "Motion").

The Motion is made pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., and on the grounds that Plaintiff concedes she entered into a binding arbitration agreement with Wells Fargo (the "Arbitration Agreement"). Ms. Wagman-Geller further submitted to arbitration by filing her demand with the American Arbitration Association ("AAA"). Any attempt by Ms. Wagman-Geller to pursue her claims against Wells Fargo in court would violate the Arbitration Agreement and Wells Fargo's rights thereunder. Ms. Wagman-Geller's challenges to the AAA filing requirements as well as her other grievances are just another effort in a long line of attempts by her counsel to avoid procedural decisions made within the AAA that were previously determined, including by the Ninth Circuit Court of Appeals, as not subject to judicial review. Moreover, Ms. Wagman-Geller's allegations regarding the relevant AAA proceedings are unsupported, false, inflammatory, and cannot provide Ms. Wagman-Geller an avenue to circumvent her Arbitration Agreement with Wells Fargo.

In the alternative, Wells Fargo moves to dismiss Plaintiff's fraudulent inducement claim under Rule 12(b)(6) because it fails to allege sufficient facts to support a cognizable legal theory and does not meet Rule 9(b)'s pleading standards.

///

///

///

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1    The Motion is based on this Notice, the accompanying Memorandum of Points and

2   Authorities, and the concurrently filed Declarations of Alicia A. Baiardo and Tiffany Ward

3   including exhibits thereto, all the records and documents on file in this matter, and any oral or

4   documentary evidence presented at the hearing of this Motion.

5   DATED: February 14, 2025                      **MCGUIREWOODS LLP**

6

7

8                                  By:   _Alicia A. Baiardo_

9                                        Alicia A. Baiardo
                                         Amy Morrissey Turk (*pro hac vice granted*)
10                                       Todd J. Dressel

11                                       Attorneys for Defendants Wells Fargo & Co. and
                                         Wells Fargo Bank, N.A.
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................................. 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ............................................................ 3

    A.    Ms. Wagman-Geller's Agreement to Arbitrate and Arbitration Demand ................. 3

    B.    Initial AAA Proceedings Over MLG Mass Arbitration ............................................. 4

        1.    MLG initiates a mass arbitration campaign against Wells Fargo ................. 4

        2.    MLG submits demands on behalf of individuals with no legitimate claims against Wells Fargo, Wells Fargo seeks relief, and the Process Arbitrator partially grants Wells Fargo relief .................................. 5

    C.    MLG Seeks to Overturn the October 27 PA Order in Court, the Court Compels MLG Back to Arbitration, and the Ninth Circuit Affirms ........................ 6

    D.    AAA Proceedings Post the Mosley DC Order .......................................................... 7

        1.    Vast majority of claimants unable to provide basic information required by or admit never could comply with October 27 PA Order .......... 7

        2.    MLG participates in arbitrations only until it gets orders it does not like ........................................................................................................... 9

        3.    MLG informs AAA that it is suspending claimants' participation in their individual merit arbitration proceedings, Wells Fargo objects, and AAA moves forward with administering individual arbitrations ......... 11

        4.    MLG refuses to participate in arbitrations despite AAA's ruling, voluntarily dismisses claimants' individual claims, then files suit ............. 12

III.    THE COURT SHOULD COMPEL ARBITRATION ......................................................... 14

    A.    The Court Should Compel Ms. Wagman-Geller's Claims Back to Arbitration ............................................................................................................... 14

        1.    It is undisputed that Ms. Wagman-Geller's Arbitration Agreement is valid and encompases her dispute with Wells Fargo ................................. 14

        2.    Ms. Wagman-Geller cannot avoid arbitration because of complaints about Merits Arbitrators' procedural decisions across different arbitrations ................................................................................................. 16

        3.    Ms. Wagman-Geller likewise cannot avoid arbitration by bringing a baseless "Fraud in the Inducement" claim ................................................. 16

IV.    THE COURT SHOULD ALTERNATIVELY DISMISS THE FRAUD IN THE INDUCEMENT CLAIM ................................................................................................... 20

V.    CONCLUSION ................................................................................................................. 23

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anunziato v. eMachines, Inc.*,
  402 F. Supp. 2d 1133 (C.D. Cal. 2005)..................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................................20

*Azoulai v. BMW of N. Am. LLC*,
  2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ......................................................21

*B.A. by & through Adinolfi v. Omni La Costa Resort & Spa, LLC*,
  2020 WL 5535027 (S.D. Cal. Sept. 14, 2020) .......................................................1

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
  207 F.3d 1126 (9th Cir. 2000)...............................................................................14

*Garcia v. General Motors LLC*,
  2019 WL 1209632 (E.D. Cal. Mar. 14, 2019) .........................................21, 22, 23

*Golden W. Wings LLC v. ShiftPixy, Inc*,
  2023 WL 6787815 (C.D. Cal. Sept. 11, 2023)......................................................22

*Heavenseven GMBH v. Lovetuner, Inc.*,
  2022 WL 3636598 (C.D. Cal. Aug. 17, 2022) ......................................................15

*Jones v. Starz Entm't, LLC*,
  2024 WL 1067505 (C.D. Cal. Mar. 11, 2024) (appeal pending) ...........................16

*Lerner v. Citigroup*,
  2019 WL 1579512 (D.N.J. Apr. 12, 2019), *aff'd*, 838 F. App'x 682 (3d Cir.
  2020).....................................................................................................................19

*Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*,
  2019 WL 6723422 (C.D. Cal. Oct. 4, 2019) ........................................................22

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983) .................................................................................................14

*Mosley v. Wells Fargo & Co.*,
  2023 WL 3185790 (S.D. Cal. May 1, 2023) ...................................1, 6, 15, 16, 17

*Mosley v. Wells Fargo & Co.*,
  2024 WL 977674 (9th Cir. Mar. 7, 2024) .......................................1, 7, 15, 16, 17

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006).........................................................................17, 19

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Newcal Indus., Inc. v. Ikon Office Sol.*,
   513 F.3d 1038 (9th Cir. 2008)..........................................................................21

*Nghiem v. NEC Elec., Inc.*,
   25 F.3d 1437 (9th Cir. 1994), *cert. denied*, 513 U.S. 1044 (1994) ........................15

*Rodriguez v. Wells Fargo Bank, N.A.*,
   2016 WL 3912539 (N.D. Cal. July 20, 2016) .......................................................1

*Serrano v. Macys W. Stores, Inc.*,
   2020 WL 6083439 (C.D. Cal. July 9, 2020) ........................................................19

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013)..............................................................................20

*Sukonik v. Wright Med. Tech.*,
   2015 WL 10682986 (C.D. Cal. Jan. 26, 2015) ....................................................21

*Ebeid ex rel. U.S. v. Lungwitz*,
   616 F.3d 993 (9th Cir. 2010) .............................................................................20

*UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*,
   117 F. Supp. 3d 1092 (C.D. Cal. 2015) ..............................................................22

*Veal v. LendingClub Corp.*,
   423 F. Supp. 3d 785 (N.D. Cal. 2019) ..........................................................20, 22

*Vital Pharms. Inc. v. PepsiCo Inc.*,
   2022 WL 2176528 (D. Ariz. June 16, 2022).......................................................16

*White v. FCA US LLC*,
   2022 WL 3370791 (N.D. Cal. Aug. 16, 2022) ....................................................20

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ...............................................................21

*Wilson v. Wells Fargo & Co.*,
   2021 WL 1853587 (S.D. Cal. May 10, 2021) .......................................................4

*Wilson v. Wells Fargo & Co.*,
   2022 WL 4125220 (S.D. Cal. Sept. 9, 2022) ........................................................4

**Statutes**

9 U.S.C. § 2 ...................................................................................................14

9 U.S.C. § 4 ...................................................................................................14

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Other Authorities**

AAA Consumer Rule R-53 ........................................................................................... 16

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

## I.     __INTRODUCTION__

Instead of moving its clients' arbitrations forward, McCune Law Group ("MLG") has spent the last two years engaged in legal gymnastics trying to avoid arbitration—filing three separate lawsuits and appealing unsuccessfully to the Ninth Circuit in an effort to avoid procedural orders within the AAA that are not subject to judicial review, rather than proceeding with their clients' individual arbitrations. When some of those individual arbitrations began in earnest before the AAA, MLG responded by simply withdrawing as counsel and ultimately dismissing the claims, finding it was not in MLG's financial interests to continue with the individual arbitrations.

This lawsuit against Wells Fargo & Company and Wells Fargo Bank N.A. (together, "Wells Fargo")[1] is the latest attempt to avoid arbitration by re-litigating issues that MLG has lost repeatedly—now re-packaging the same complaint with a "fraud in the inducement" claim and naming the American Arbitration Association ("AAA") as a co-defendant. Ms. Wagman-Geller's complaint conspicuously omits the great lengths MLG has gone to avoid the Ninth Circuit's finding that Wells Fargo has not acted improperly in responding to this mass arbitration campaign as it simply seeks to resolve legitimate disputes.[2] As before, this Court should compel arbitration or alternatively dismiss the Complaint.

This story begins in 2022 with MLG bringing nearly 4,000 individual claimant demands against Wells Fargo after the Southern District of California granted Wells Fargo's motion to

---

[1] The term Wells Fargo includes both Wells Fargo & Co. ("WF&C") and Wells Fargo Bank, N.A. However, as the holding company, WF&C is an improperly named defendant. *B.A. by & through Adinolfi v. Omni La Costa Resort & Spa, LLC*, 2020 WL 5535027, at *6 (S.D. Cal. Sept. 14, 2020); *Rodriguez v. Wells Fargo Bank, N.A.*, 2016 WL 3912539, at *1, n.1 (N.D. Cal. July 20, 2016). Furthermore, Plaintiff's AAA demand makes no allegations against WF&C. WF&C should therefore be dismissed from this action. Declaration of Alicia Baiardo ("Baiardo Decl.") at ¶ 3, Ex. 2. (the "Arbitration Demand").

[2] *Mosley v. Wells Fargo & Co.*, 2024 WL 977674, at *1 (9th Cir. Mar. 7, 2024) [hereinafter the "*Mosley* Appellate Order"] ("Wells Fargo did not act improperly or otherwise breach the agreement. In fact, Wells Fargo simply sought information establishing that each Claimant had a __legitimate dispute__ with them. Wells Fargo complied with the Arbitration Agreement and paid more than half a million dollars in arbitration fees over several months of arbitration before Claimants filed their case in federal court."); *see also Mosley v. Wells Fargo & Co.*, 2023 WL 3185790, at *3-4 (S.D. Cal. May 1, 2023) [hereinafter, the "*Mosley* DC Order"].

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

compel arbitration in another matter (*Wilson*). Each demand was boilerplate, asserting nearly identical claims based on identical allegations giving Wells Fargo concern at to whether these claimants actually had a dispute with Wells Fargo—or were even Wells Fargo customers or had enrolled in the program at issue. Wells Fargo sought, and the AAA Process Arbitrator partially granted, relief requiring MLG to provide basic information about those claimants—like for example their account numbers. When MLG finally complied with the procedural orders after unsuccessful federal litigation, MLG abandoned nearly 90% of those claimants and admitted that 41.5% never had and could never have had the claims they had asserted against Wells Fargo. For the remaining 10% or 432 claimants, AAA began moving forward with individual bilateral arbitrations, including Ms. Wagman-Geller—ostensibly the previous claimed goal of MLG.

Unbelievably, after participating in an initial round of scheduling conferences and after Wells Fargo paid nearly $1 million in fees for these arbitrations, MLG sent a notice unilaterally choosing to suspend its clients' participation in arbitration. As part of that notice, MLG suddenly demanded that AAA order collective procedural rules that would govern all remaining arbitrations to make the process more cost-effective for MLG. AAA directed MLG to raise such procedural issues with each merits arbitrator as provided by the AAA rules. Instead of doing so, MLG ultimately voluntarily dismissed the remaining demands, including Ms. Wagman-Geller's, and filed this lawsuit complaining of the costs and delays she claims were forced on her by Wells Fargo (and AAA).[3]

As will be discussed in greater detail below, MLG's attempt to recast arguments that have already been decided does not change the fact that they remain legally and factually unsupportable on their face and not subject to judicial review. Ms. Wagman-Geller's dispute with Wells Fargo

---

[3] As the Court is now aware, on November 27, 2024, Defendants' counsel discovered that original Plaintiff Joseph Bacigalupi ("Mr. Bacigalupi") had passed away on October 12, 2024, approximately two weeks after commencing this matter. Bairdo Decl. ¶ 70. After notifying MLG, who was unaware of his passing, the Parties submitted a Joint Stipulation providing Plaintiff's counsel until January 31, 2025, to confirm Plaintiff's passing and decide if counsel wanted to file an amended Complaint. Dkt. No. 17. On January 31, 2025, the First Amended Complaint ("FAC") was filed on behalf of Ms. Wagman-Geller as the representative plaintiff. Dkt. No. 24.

CASE NO. 3:24-CV-06778-SK

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1   remains subject to arbitration. Ms. Wagman-Geller cannot avoid her agreement simply because she

2   chose to unilaterally withdraw from arbitration. Ms. Wagman-Geller's bare allegations of fraud

3   also do not overcome her agreement to arbitrate. As a result, Ms. Wagman-Geller must be

4   compelled to arbitration. In the alternative, the Court should dismiss Ms. Wagman-Geller's claims

5   for failure to state a claim.

6   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

7        Wells Fargo provides a summary of the extensive factual and procedural history which is

8   important to contextualize Ms. Wagman-Geller's claims.

9        **A.    Ms. Wagman-Geller's Agreement to Arbitrate and Arbitration Demand**

10       On June 24, 2011, Ms. Wagman-Geller opened a Wells Fargo checking account (the

11  "Account"). FAC at ¶ 58; *see also* Declaration of Tiffany Ward ("Ward Decl.") ¶ 2. When Ms.

12  Wagman-Geller opened her Account, she received and agreed to be bound by the terms of Wells

13  Fargo's Deposit Account Agreement (the "Account Agreement"). Ward Decl. ¶ 3, Ex. B. As

14  permitted by Ms. Wagman-Geller's agreement, Wells Fargo amended and modified the terms of

15  her Account Agreement. *Id.* ¶ 3. The July 2024 Account Agreement in effect at the time this action

16  was filed contained provisions requiring arbitration of disputes between Wells Fargo and Ms.

17  Wagman-Geller (the "Arbitration Agreement"). Compl. at Ex. C at 3 –37; FAC at Ex. C at 35–37.[4]

18       The Arbitration Agreement requires any dispute be subject to arbitration. *Id.* at 35. Dispute

19  is defined as "any unresolved disagreement between Wells Fargo and you," including any

20  "disagreement about this Arbitration Agreement's meaning, application, or enforcement." *Id.* The

21  Arbitration Agreement further provides that the "American Arbitration Association (AAA) will

22  administer each arbitration and the selection of arbitrators according to AAA's Consumer

23  Arbitrations Rules" and that "[n]either Wells Fargo nor you will be entitled to join or consolidate

24  disputes by or against others as a representative or member of a class, to act in any arbitration in

25  the interests of the general public, or to act as a private attorney general." *Id.*

26

27  ────────────
    [4] The November 2022 Account Agreement in effect at the time Ms. Wagman-Geller submitted her
    demand likewise contained provisions requiring arbitration. Ward Decl. ¶ 3, Ex. C at 35-37. The

28  July 2024 and November 2022 Account Agreements contain identical arbitration provisions.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

On December 30, 2022, Ms. Wagman-Geller submitted her Arbitration Demand against Wells Fargo as part of MLG's mass arbitration, enclosing her arbitration agreement. Baiardo Decl. at ¶ 3, Ex. 2. Ms. Wagman-Geller's Arbitration Demand alleged a violation of Regulation E, and discussed theories related to authorized positive, settle negative ("APSN") transactions and assessment of multiple fees on the same returned items ("Multiple Fees"). *Id.*

**B.    Initial AAA Proceedings Over MLG Mass Arbitration**

Long before Ms. Wagman-Geller entered this lawsuit, MLG began its mass arbitration campaign which did not go the way MLG anticipated. This lawsuit is just the latest in a series of failed attempts to get a different result.

**1.    MLG initiates a mass arbitration campaign against Wells Fargo.**

On November 25, 2020, MLG filed a class action complaint on behalf of Mosanthony Wilson ("Wilson") and all others similarly situated, alleging similar Regulation E and California UCL violations as alleged by Mr. Bacigalupi. *Wilson v. Wells Fargo & Co.*, No. 3:20-cv-02307-DMS-WVG, (S.D. Cal. filed Nov. 25, 2020), at Dkt. No. 1. On May 8, 2021, the court granted Wells Fargo's motion to compel arbitration, ordering that the litigation be stayed. *Wilson v. Wells Fargo & Co.*, 2021 WL 1853587, at *2-4 (S.D. Cal. May 10, 2021).[5]

While MLG and Wells Fargo were engaged in the Wilson arbitration, MLG initiated a mass arbitration against Wells Fargo. Baiardo Decl. ¶¶ 3-4, Ex. 3. AAA informed the parties that AAA's Consumer Rules ("Consumer Rules") and AAA's Supplementary Rules for Multiple Case Filings (the "Supplementary Rules")[6] would apply to the arbitration demands filed by MLG and appointed the Honorable Anita Rae Shapiro to serve as Process Arbitrator for the mass arbitration. *Id.* ¶ 6, Exs. 7-8. MLG participated in selecting the Process Arbitrator through a rank and strike process. *Id.* ¶ 6, n.3. MLG specifically agreed to AAA's application of the Supplementary Rules to the mass arbitration in writing and orally, and willingly participated in the selection and appointment of the

---

[5] Following a hearing on the merits of Wilson's claims, on July 14, 2022, the arbitrator issued a final award fully in favor of Wells Fargo. *See Wilson v. Wells Fargo & Co.*, 2022 WL 4125220, at *1 (S.D. Cal. Sept. 9, 2022); Baiardo Decl. ¶ 2, Ex. 1.

[6] The Supplementary Rules became effective August 1, 2021. AAA's subsequent rule changes are not applicable here. *Id.* ¶ 4, n.2.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

Process Arbitrator. *Id.* ¶¶ 4, 6, n.3, Ex. 5; *see also Mosley, et al. v. Wells Fargo & Co., et al.*, No. 3:22-cv-01976-BJC-SBC (S.D. Cal. filed Dec. 13, 2022) [hereinafter "*Mosley*"] at Dkt. No. 25 at § II.C (entitled "Plaintiffs [i.e., MLG] Agree to the Application of the Supplementary Rules…"). MLG continued to file individual arbitration demands in tranches, and as of May 28, 2024, MLG had filed a total of 3,965 demands—including Ms. Wagman-Geller's. Baiardo Decl. ¶ 5.

> **2.    MLG submits demands on behalf of individuals with no legitimate claims against Wells Fargo, Wells Fargo seeks relief, and the Process Arbitrator partially grants Wells Fargo relief.**

The demands filed as part of MLG's mass arbitration (including Ms. Wagman-Geller's) were virtually identical and did not specify which state consumer fraud law or statutory section applied to the individual claimant's arbitration. *Id.* ¶ 5. It soon became clear that MLG was not performing reasonable due diligence to confirm that claimants were (1) Wells Fargo customers, (2) had enrolled in Debit Card Overdraft Service ("DCOS") (a pre-requisite to bringing their claims), or (3) had incurred any overdraft fees subject to Regulation E. *Id.* ¶ 8.[7] In fact, Wells Fargo's preliminary review of the demands indicated that many claimants never even agreed to participate in DCOS. *Id.* ¶ 9, Ex. 11. As a result, Wells Fargo sought relief from the Process Arbitrator pursuant to Supplementary Rule MC-6, asking that the Process Arbitrator require MLG to provide basic information in the demands it was filing necessary for Wells Fargo to adequately defend itself. *See id.* ¶¶ 11-13, Ex. 13.[8] After full briefing and a hearing on the issue, the Process Arbitrator entered an order partially granting Wells Fargo's request by setting filing requirements for each claimant in MLG's mass arbitration to include certain basic facts to establish a colorable Regulation E claim against Wells Fargo and ordering each claimant to file an amended demand for all claims filed before October 27, 2022, and all demands filed thereafter to comply with such filing

---

[7] With some arbitration demands, MLG also submitted an "authorization" form which purported to provide information about its clients' Wells Fargo accounts. *Id.* The authorizations established MLG's failure to vet its clients' claims by, for example, claimants listing their Wells Fargo account numbers as: "i don't have one"; "Idk"; "xxxxxxxxxx"; "XXX…"; "Not giving my account"; "None"; "999999999"; "N/a"; "[claimant's last name]"; "Not sure"; "Blank"; .000000000". *Id.* ¶ 8, Ex. 10.

[8] Before Wells Fargo sought relief, AAA began invoicing Wells Fargo for administrative fees. *Id.* ¶ 7, Ex. 9. Wells Fargo paid every invoice issued by AAA. *Id.* ¶ 7.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1    requirements (the "October 27 PA Order"). *Id.* ¶¶ 13-14, Exs. 13-16.

2    **C.    MLG Seeks to Overturn the October 27 PA Order in Court, the Court Compels MLG Back to Arbitration, and the Ninth Circuit Affirms**

3

4         Rather than abide by the October 27 PA Order, on December 13, 2022, MLG filed *Mosley*

5    in an attempt to have the order overturned in the United States District Court for the Southern

6    District of California. *Id.* ¶ 15-22; s*ee also Mosley* at Dkt. No. 1 ("*Mosley* Complaint"). The *Mosley*

7    Complaint was filed on behalf of just four claimants included in MLG's mass arbitration. *Mosley*

8    Complaint at ¶¶ 16-19. *Mosley* alleged Wells Fargo had breached the *Mosley* Plaintiffs' Arbitration

9    Agreements due to the Process Arbitrator's entry of the October 27 PA Order and that they were

10   therefore no longer bound by their agreements to arbitrate. *See id.* ¶¶ 79-91. Importantly, MLG

11   argued that Wells Fargo was in breach based on its alleged failure to provide each *Mosley* Plaintiff

12   the individual arbitrations required in such agreements. *See, e.g., Mosley* at Dkt. No. 13-1 at 4-5;

13   *Mosley* at Dkt. No. 25 at 7.

14        Wells Fargo moved to compel the *Mosley* plaintiffs back to arbitration, which the district

15   court granted on May 1, 2023. *Mosley* DC Order, 2023 WL 3185790, at *3-4; *see also* Baiardo

16   Decl. ¶¶ 24-25; *Mosley* at Dkt. Nos. 21, 21-1. The Court held that the October 27 PA Order was

17   "not an award on the merits but a procedural order that addresses claim filing requirements in the"

18   mass arbitration. *Mosley* DC Order, 2023 WL 3185790 at *4. The Court held that because the

19   October 27 PA Order dealt "with procedure, namely pleading and filing requirements, to provide

20   an orderly process for the [mass arbitration]—all based on [the Process Arbitrator's] interpretation

21   of the Supplementary Rules to which the parties agreed," it was not a final order subject to judicial

22   review. *Id.*

23        On May 26, 2023, MLG appealed the *Mosley* DC Order. Baiardo Decl. ¶ 26; *Mosley* at Dkt.

24   No. 31. In its Ninth Circuit briefing, MLG reiterated its position that not providing each *Mosley*

25   Plaintiff the individual arbitration required in their arbitration agreements amounted to a breach.

26   Br. of Appellants at 9-11, 35-38, *Mosley, et al. v. Wells Fargo Bank, N.A., et al.*, No. 23-55478 (9th

27   ///

28   ///

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT**

Cir. June 23, 2023) ("*Mosley* Appellant's Brief").[9] The Ninth Circuit noted that although case law permits courts to decline to compel arbitration where one party defaults or entirely refuses to cooperate in arbitration, Wells Fargo did not do so. *Mosley* Appellate Order, 2024 WL 977674, *2. Instead, the Ninth Circuit held that "Wells Fargo did not act improperly or otherwise breach the agreement." *Id.* "In fact, Wells Fargo simply sought information establishing that each Claimant had a ***legitimate dispute*** with them. Wells Fargo complied with the Arbitration Agreement and paid more than half a million dollars in arbitration fees over several months of arbitration before Claimants filed their case in federal court." *Id.* (emphasis added).

    **D.**    **AAA Proceedings Post the Mosley DC Order**

        **1.**    **Vast majority of claimants unable to provide basic information required by or admit never could comply with October 27 PA Order.**

While the *Mosley* appeal was pending, Wells Fargo (not MLG) informed AAA and the Process Arbitrator of the *Mosley* DC Order, and the Process Arbitrator held a status conference to discuss how to move the mass arbitration forward. Baiardo Decl. ¶¶ 25-26, Exs. 30-31. On June 14, 2023, the Process Arbitrator entered an order (the "June 14 PA Order") enforcing the October 27 PA Order, setting deadlines of August 14, 2023 and September 13, 2023 for which MLG and claimants were required to comply with the October 27 PA Order. *Id.* ¶ 26, Ex. 32.[10]

---

[9] This is consistent with MLG's position across all of the litigation it has filed up until the filing of this case—that Wells Fargo would be in breach of its arbitration agreement if it imposed collective procedures and offered MLG's claimants anything other than the bilateral, individual arbitrations promised in their agreements. *See, e.g., Mosley* at Dkt. No. 13-1 at 4-5 ("The arbitration agreement requires consumers to waive all rights to participate in a class or other collective action. . . . Thus, ***each arbitration hearing must be individual in nature***—meaning that in cases alleging fault with Wells Fargo's uniform conduct, tens of thousands (if not hundreds of thousands, or even millions) of individual arbitrations may become necessary.") (emph. added); *Mosley* at Dkt. No. 25 at 8 ("By demanding Plaintiffs' compliance with a class-wide filing requirement, Wells Fargo refuses to arbitrate Plaintiffs' claims individually…"); *Mosley* Appellant's Brief at 9-11, 35-38, (arguing that "Wells Fargo abandoned any pretense that it would pursue individual arbitrations" and "looked to [improperly] convert the bilateral arbitration process into a class arbitration process" in violation of the *Mosley* Plaintiffs' arbitration agreements); *Penuela* at Dkt. No. 23 at 17-19 ("The problem with Wells Fargo's position is straightforward: Plaintiffs' claims did not receive the individual, bilateral hearing they were promised.").

[10] Rather than abide by the Process Arbitrator's orders, MLG submitted an unapproved motion to amend claimants' demands and the Process Arbitrator's prior orders (the "Motion to Amend").

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

Facing a deadline to comply with the AAA filing requirements and despite over a year having passed since starting the mass arbitration, it became apparent that MLG had never investigated whether the nearly 4,000 claimants for whom it had filed demands had a claim against Wells Fargo. *See id.* ¶¶ 29-34, Exs. 37-45. The information MLG submitted in its attempt to meet the October 27 PA Order requirements confirmed MLG had submitted demands on behalf of 2,389 claimants who MLG could not establish had an underlying claim and conceded that 1,635 of claimants did not have and could never have had the Regulation E claim they asserted against Wells Fargo. *Id.* ¶ 33, Ex. 43 at 14. As a result, Wells Fargo requested that the Process Arbitrator enforce the October 27 PA Order by: (1) moving ahead with individual merit arbitrations for claimants MLG had confirmed could meet the relevant AAA filing requirements; and (2) dismissing all the other claims without prejudice with the ability to re-submit demands under specific conditions. *Id.*

On January 10, 2024, the Process Arbitrator entered an order dismissing without prejudice claimants who had failed to meet the AAA filing requirements in the October 27 PA Order (the "January 10 PA Order").[11] *Id.* ¶ 39, Ex. 50. As a result, 3,503 of 3,935 claims were dismissed without prejudice with the ability to re-file demands meeting the filing requirements of the Process Arbitrator's orders. Rather than abide by the January 10 PA Order, MLG filed another lawsuit. *Id.* ¶ 41; *see also Penuela, et al. v. Wells Fargo & Co., et al.*, 3:24-cv-02098-BJC-SBC (S.D. Cal. filed Feb. 8, 2024) [hereinafter "*Penuela*"], at Dkt. No. 1.[12]

///

---

Baiardo Decl. ¶ 27, Ex. 33. The Process Arbitrator entered an order acknowledging that AAA's rules required arbitrator approval to amend, deemed MLG's service of its motion a "request for the Arbitrator to allow it to be filed and considered," and held a call to consider the motion. *Id.* ¶ 28, Ex. 36.

[11] Prior to entry of the January 10 PA Order, the Process Arbitrator entered a November 10, 2023 order (the "November 10 PA Order") denying MLG's request to amend her previous orders, permitting claimants who had met the October 27 PA Order's requirements to move forward with their individual merit arbitrations, dismissing without prejudice claimants who had failed to meet such requirements, permitting MLG to file a renewed motion to amend (the "Renewed Motion to Amend"), and setting a briefing schedule. *Id.* ¶ 35, Ex. 46.

[12] Upon Wells Fargo's motion to either dismiss or transfer the *Penuela* matter subject to the "first-filed" rule, on November 6, 2024, the Court transferred the case to the Southern District of California, where *Mosley* was decided. *Penuela* at Dkt. Nos. 19 & 32. Wells Fargo's motion to compel the *Penuela* plaintiffs back to arbitration remains pending. *See id.* at Dkt. No. 20.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

2. **MLG participates in arbitrations only until it gets orders it does not like.**

For the 432 claimants who met the AAA filing requirements in the October 27 PA Order (including Ms. Wagman-Geller), AAA moved forward with administering their individual merit arbitrations pursuant to the January 10 PA Order. Baiardo Decl. ¶ 40, Ex. 51. On January 10, 2024, AAA requested that Wells Fargo meet and confer with MLG "to identify a specific method of appointing arbitrator(s)" to the first 187 individual cases moving forward. *Id.* In conferring, MLG again reiterated its position that the merit arbitrations must be individualized. *Id.* ¶ 40, Ex. 52.

On April 17, 2024, AAA began appointing arbitrators for the first 187 individual claimant arbitrations. *Id.* ¶ 48. Wells Fargo and MLG objected to the appointment of some arbitrators based on lack of experience in the laws at issue. *Id.* MLG also objected to the appointment of various arbitrators based on a purported lack of impartiality, asserting either that (i) the arbitrator had been involved in past arbitrations involving Wells Fargo and/or Wells Fargo's outside counsel; (ii) the arbitrator had Wells Fargo accounts; and/or (iii) the arbitrator did not provide supplemental information explaining involvement with Wells Fargo. *Id.* Wells Fargo responded that these were not legitimate attacks on impartiality. *Id.* Ultimately, AAA discharged 11 arbitrators based on MLG's objections and 5 arbitrators based on Wells Fargo's objections. *Id.* Eleven more were removed because both MLG and Wells Fargo objected to their appointments. *Id.*

AAA also began scheduling preliminary management conferences ("PMCs") for individual arbitrations of claimants for whom an arbitrator had been confirmed. *Id.* ¶ 49. Prior to the PMCs, AAA submitted form scheduling orders to the parties and asked that they meet and confer on the same. *Id.* As the parties could not agree on many of the items, each party set forth their differing positions on the scheduling order submitted to the assigned merits arbitrator before the PMC. The areas of difference included, but were not limited to: (i) whether claimants were required to amend their claims in accordance with the filing requirements set forth in the January 10 PA Order before obtaining discovery from Wells Fargo; (ii) the scope of information Wells Fargo should be required to provide the individual claimant; and (iii) whether the individual claimant should be required to appear at a deposition and the final hearing in person (despite MLG having demanded in person hearings in 259 of the demands for these 432 claimants, including for Ms. Wagman-Geller). *Id.* ¶¶

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

40, 49, Ex. 64.

At each PMC, the parties provided background to the merit arbitrator on the procedural posture of the claimant's case and the orders entered by the Process Arbitrator. *Id.* ¶ 50. The parties also argued their positions on the disputed issues related to amendment of the arbitration demand, discovery, and in-person depositions and hearings. *Id.* Ultimately, each merits arbitrator handled the individual arbitrations as they determined was proper based upon the information provided to them and the AAA rules that govern such arbitrations. Some arbitrators ordered the parties to brief the issue of whether Wells Fargo was required to produce discovery prior to the claimant amending a demand. *Id.* ¶ 50. For example, Arbitrator Jennifer Cook ordered briefing on the amendment issue. *Id.* ¶ 50, Ex. 65. In another matter, Arbitrator Houston Putnam Lowry did not require briefing, and instead ordered a claimant to file an affidavit if he did not have access to his bank statements online, and that in absence of an affidavit, it "shall be presumed Claimant has on-line access to his statements." *Id.* ¶¶ 51, 52, Ex. 69. Thereafter, Arbitrator Lowry ordered the claimant to identify all transactions he wished to question, and ordered Wells Fargo to provide information on those specific transactions. *Id.* MLG never submitted an affidavit for the claimant. *Id.* ¶ 52.

The merits arbitrators also entered scheduling orders based on the arguments set forth at the PMCs and any briefing that was ordered. *Id.* ¶ 51, Exs. 68-71. For example, after the parties submitted their briefing to Arbitrator Cook, she ordered Wells Fargo to produce or make available monthly account statements for the last three years the account was open, but did not order production of granular account data. *Id.* ¶ 51, Ex. 68. Arbitrator Cook also ordered that claimant's deposition be taken remotely, but that the evidentiary hearing would be in-person. *Id.* Arbitrator Lowry ordered that both claimant's deposition and the evidentiary hearing take place in person. *Id.* ¶ 51, Ex. 69. Arbitrator Kirby Smith ordered that both claimant's deposition and the evidentiary hearing be conducted remotely. *Id.* ¶ 51, Ex. 71. Ultimately, MLG and Wells Fargo attended PMCs on behalf of thirty-seven individual claimants between May 30, 2024 and July 12, 2024. *Id.* ¶ 53.

///

///

///

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

3. **MLG informs AAA that it is suspending claimants' participation in their individual merit arbitration proceedings, Wells Fargo objects, and AAA moves forward with administering individual arbitrations.**

On July 12, 2024, MLG submitted a letter to AAA's administration entitled "Notice of Suspension in Arbitration" (the "July 12 Notice"). *Id.* ¶ 55, Ex. 74. The July 12 Notice stated claimants' purported "intent to suspend participation in further AAA proceedings unless substantial changes are made to the arbitration proceedings." *Id.* MLG argued that Wells Fargo was taking a "scorched-earth" approach to defending the individual merit arbitrations, making them too "complex, cumbersome, and expensive." *Id.* MLG based this argument on the following requests Wells Fargo made to the individual arbitrators: (i) briefing on the issue of discovery due to its disagreement with MLG's position on the issue; (ii) individual discovery for each individual merit arbitration; (iii) a live, in-person deposition of the claimant alleging wrongdoing; (iv) a live deposition of claimant's expert to the extent the claimant utilized one; (v) the ability to file a dispositive motion; and (vi) an in-person hearing. *Id.* Notably, MLG did not allege that Wells Fargo's requests harmed consumers, but that it cut into MLG's pockets because the firm would have to expend resources to litigate the claims it filed. *See id.* at § III.[13]

MLG's demanded changes included seeking a "mandatory process" of: (i) 5 and 10 page brief/exhibit limitations; (ii) remote depositions of all claimants with a 2-hour limitation; (iii) a single protective order related to Wells Fargo produced documents that would apply across all cases; (iv) a single production of Wells Fargo documents that may be used across all cases, with the exception of claimant specific documents; (v) one Rule 30(b)(6) equivalent deposition of a fully prepared most knowledgeable Wells Fargo representative that may be used across all claimants' cases; (vi) a single deposition of claimant's expert who would testify on the methodology used across the cases, and then would provide a report on how that approach was implemented in each case; (vii) mandatory use of remote hearings; and (viii) use of Bellwether cases. *See id.* at § IV.

On July 16, 2024, Wells Fargo responded to the July 12 Notice explaining that MLG's

---

[13] Nearly 50% of the anticipated work MLG complains of relates to travel despite MLG choosing to represent thousands of claimants around the country and filing demands originally requesting in-person hearings. *See id.*

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

requested "mandatory process" would require the use of collective procedures not permitted by claimants' and Wells Fargo's individual arbitration agreements or AAA rules. *Id.* ¶ 56, Ex. 75. Wells Fargo also pointed out that MLG's issues with Wells Fargo's defense were based on concerns related to MLG's own—and not its clients'—expenditure of time. *Id.*

On July 22, 2024, AAA provided the parties with dispute resolution options. *Id.* ¶ 57, Ex. 76. If the parties could not reach agreement, AAA would continue to administer the cases as it had been as "AAA has no authority to alter arbitrators' orders or to require certain discovery processes." *Id.* AAA further pointed the parties to AAA Consumer Rule 39, which provides that the "arbitration may proceed even if any party or representative is absent, so long as proper notice was given and that party or representative fails to appear or obtain a postponement from the arbitrator." *Id.* The parties unsuccessfully met and conferred. *Id.* ¶ 58, Ex. 77. On August 8, 2024, AAA notified the parties it would continue its administration of the individual arbitrations and directed the parties to raise their requests with the merits arbitrator appointed to each case. *Id.*

### 4. MLG refuses to participate in arbitrations despite AAA's ruling, voluntarily dismisses claimants' individual claims, then files suit.

Thereafter, AAA continued to administer the individual arbitrations. On August 23, 2024, MLG sent an email to AAA stating it would "continue to stand by" the July 12 Notice, "hope[d]" AAA had notified the assigned arbitrators of its position, and that it was "actively consulting with" its clients "regarding this situation" and would "provide an update once those conversations concluded." *Id.* ¶ 59, Ex. 78. MLG refused to participate in the individual arbitrations but did not dismiss the demands or withdraw as counsel. *Id.* ¶ 60. To ensure claimants were aware of MLG's refusal, Wells Fargo requested that merits arbitrators order a status conference requiring the presence of the claimant. *Id.* ¶ 60, Ex. 79. Wells Fargo also requested the order be sent to both MLG and the claimant simultaneously to ensure the claimant was aware of MLG's actions. *Id.*

Merits arbitrators then began issuing orders. *Id.* ¶ 61, Exs. 80-82. Some arbitrators granted Wells Fargo's request that claimant be ordered to attend a status conference, while others did not. *Id.* Other arbitrators entered orders on their own accord, including Arbitrator Lowry, who ordered that claimant show cause on or before September 23, 2024 as to why his demand should not be

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

dismissed with prejudice. *Id.* ¶ 61, Ex. 81. Prior to any status conferences taking place, on the evening of September 25, 2024, MLG began submitting notices of voluntary dismissals on behalf of claimants that had been assigned a merits arbitrator. *Id.* ¶ 64, Ex. 83.[14] On September 26, 2024, MLG submitted a notice of voluntary dismissal for all claimants who had not yet been assigned merits arbitrators, including Ms. Wagman-Geller. *Id.* ¶ 64, Ex. 84. Later that day, MLG filed this lawsuit on behalf of Mr. Bacigalupi.

On October 17, 2024, AAA advised it would proceed with closing, as withdrawn, 254 individual arbitrations without an arbitrator yet appointed and refund $630,000 in arbitrator compensation deposits to Wells Fargo, including Ms. Wagman-Geller's. *Id.* ¶ 68, Ex. 88. AAA advised that the matters would be administratively closed absent notification from either party and then closed the relevant individual arbitrations with a statement listing the amount of unused arbitrator compensation to be refunded to Wells Fargo. *Id.* ¶ 68, Ex. 89.

On September 26, 2024, MLG filed this lawsuit on behalf of Mr. Bacigalupi against Wells Fargo, and now for the first time, also against AAA. On January 31, 2025, MLG filed the FAC, which substituted Ms. Wagman-Geller for Mr. Bacigalupi as Plaintiff. The FAC asserts claims for (1) fraud in the inducement; (2) violation of the EFTA or Regulation E; (3) violation of California's Unfair Competition Law and (4) Breach of Contract. FAC at ¶¶ 126-168. The majority of Ms. Wagman-Geller's allegations relate to her underlying Regulation E claims about Wells Fargo's history of charging fees. *Id.* at ¶¶ 1-7, 40-46, 59-110, 140-168. Ms. Wagman-Geller seeks to represent four incredibly broad classes improperly pegged off the initial filing of the first individual arbitration demand in MLG's mass arbitration. *Id.* at ¶ 113.

///

///

---

[14] MLG submitted voluntary notices of dismissal for all claimants except one. *Id.* ¶ 65. For that claimant, rather than a dismissal, MLG submitted a motion to withdraw from proceedings. *Id.* ¶ 65, Ex. 85. MLG's motion established that it had first began informing its clients of its intentions within AAA on, at the latest, August 20, 2024. *Id.* Despite MLG knowing its intent to voluntary dismiss claimants on August 20, 2024, it sat by while AAA invoiced Wells Fargo for over $337,000 of non-refundable administrative fees and, only after Wells Fargo paid those fees did MLG submit its voluntary dismissals of claimants' cases. *Id.* ¶¶ 62-65, 68-69, Exs. 85, 88, 89.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1    III.    <u>THE COURT SHOULD COMPEL ARBITRATION</u>

2        **A.    The Court Should Compel Ms. Wagman-Geller's Claims Back to Arbitration**

3        MLG—through Ms. Wagman-Geller—brings this lawsuit on behalf of sweeping proposed

4    classes to assert the same underlying Regulation E claims that Ms. Wagman-Geller already raised

5    in arbitration when she initially submitted her demand with AAA against Wells Fargo on December

6    30, 2022. This lawsuit does not change that conclusion—that Ms. Wagman-Geller's claims should

7    be resolved in arbitration.

8        An agreement to submit disputes to arbitration "shall be valid, irrevocable, and enforceable,

9    save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §

10    2. The FAA requires that courts enforce valid arbitration agreements "in the manner provided for

11    in [the parties'] agreement." 9 U.S.C. § 4. The FAA "leaves no place for the exercise of discretion

12    . . . but instead mandates that . . . courts ***shall*** direct the parties to proceed to arbitration on issues

13    as to which an arbitration agreement has been signed." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,

14    207 F.3d 1126, 1130 (9th Cir. 2000) (citation omitted) (emphasis added). The role of a court in

15    applying the FAA is "limited to determining (1) whether a valid agreement to arbitrate exists and,

16    if it does, (2) whether the agreement encompasses the dispute at issue." *Id.* (citation omitted).

17    Further, the FAA mandates that "any doubts concerning the scope of arbitrable issues should be

18    resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S.

19    1, 24-25 (1983). Here, a valid agreement to arbitrate exists and it encompasses the dispute at issue.

20        **1.    It is undisputed that Ms. Wagman-Geller's Arbitration Agreement is valid and encompasses her dispute with Wells Fargo.**

21

22        On June 24, 2011, Ms. Wagman-Geller entered into a valid agreement to arbitrate her claims

23    against Wells Fargo when she entered into her Account Agreement. FAC ¶ 58 ("Plaintiff has held

24    an account with Wells Fargo at all times relevant to the allegations"); Baiardo Decl. ¶ 3, Ex. 2 (Ms.

25    Wagman-Geller's December 2022 Demand agreeing that her dispute was subject to arbitration);

26    Ward Decl. ¶¶ 2-3; FAC at Ex. C at 35-37. As permitted by the terms of Ms. Wagman-Geller's

27    agreement, the terms of her Account Agreement were amended and modified as of the date this

28    action was filed. FAC at Ex. C; Ward Decl. ¶ 3. Ms. Wagman-Geller does not dispute the parties'

-14-                    CASE NO. 3:24-CV-06778-SK

1  arbitration agreement as evidenced by the fact that she submitted her demand to arbitration and

2  attached the July 2024 Account Agreement in the FAC.[15]

3         Ms. Wagman-Geller's Arbitration Agreement encompasses her dispute because she agreed

4  that any dispute must be adjudicated through arbitration. FAC at Ex. C at 35; *see also Mosley* DC

5  Order, 2023 WL 3185790, at *3-4; *Mosley* Appellate Order, 2024 WL 977674, at *2-3.

6         Furthermore, because Ms. Wagman-Geller already submitted her Regulation E claims to

7  AAA's authority, she cannot now try to bring claims in court. *See, e.g.*, *Mosley* DC Order, 2023

8  WL 3185790, at *4 ("Once a party demands arbitration, as here, the party has submitted to the

9  authority of the arbitral tribunal."); *Nghiem v. NEC Elec., Inc*., 25 F.3d 1437, 1440 (9th Cir. 1994),

10 *cert. denied*, 513 U.S. 1044 (1994) ("Once a claimant submits to the authority of the arbitrator and

11 pursues arbitration, he cannot suddenly change his mind and assert lack of authority.");

12 *Heavenseven GMBH v. Lovetuner, Inc.*, 2022 WL 3636598, at *5 (C.D. Cal. Aug. 17, 2022)

13 (voluntary initiation of arbitration can act as a waiver of any objection to the authority of the

14 arbitrator). The only allegations Ms. Wagman-Geller did not previously allege in arbitration relate

15 to her fraud claim brought against Wells Fargo and AAA. That claim too is arbitrable and should

16 be compelled to arbitration or, in the alternative, dismissed as explained below.[16] Accordingly, Ms.

17 Wagman-Geller's Arbitration Agreement encompasses this dispute and Ms. Wagman-Geller must

18 be compelled back to arbitration.

19 ///

20 ///

21

---

22 [15] Ms. Wagman-Geller's demand attaches her Deposit Account Agreement dated October 15, 2021.
   Baiardo Decl. ¶ 3., Ex. 2. Since this was amended before she submitted her AAA demand, the
23 operative agreement when she filed her demand is the one dated November 15, 2022, but the
   arbitration agreement is virtually the same as included in the October 15, 2021 agreement
24 acknowledged by Ms. Wagman-Geller. *Id.* ¶ 3.

25 [16] The FAC re-hashes the same arguments made in MLG's prior lawsuits stemming from MLG's
   failed mass arbitration. As in *Mosley* and *Penuela*, Ms. Wagman-Geller claims that Wells Fargo
26 was in a collusive relationship with AAA that harmed consumers. *See, e.g., Mosley* Complaint ¶¶ 4
   (stating that Wells Fargo was "abetted by AAA"), 5 ("AAA actively facilitates Wells Fargo's
27 conduct"), 8-9; *Penuela* FAC ¶¶ 111-116. The added fraud in the inducement claim does not change
28 the outcome.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1

**2.    Ms. Wagman-Geller cannot avoid arbitration because of complaints about Merits Arbitrators' procedural decisions across different arbitrations.**

2

3

Ms. Wagman-Geller's Complaint asks this Court to void or enjoin Wells Fargo from

4

enforcing the parties' arbitration agreement based upon underlying conduct in MLG's mass

5

arbitration against Wells Fargo. In support, Ms. Wagman-Geller makes (unsupported) allegations

6

about the extent of pre-arbitration proceedings held before individual arbitrators in various

7

individual arbitrations. FAC ¶¶ 21 (complaining about preliminary merit arbitration hearings), 23

8

(complaining about briefing on discovery issues in merit arbitrations), 133 (complaining about

9

Wells Fargo's actions in individual merit arbitrations). These are not grounds to avoid arbitration.

10

Setting aside that Ms. Wagman-Geller does not have standing to take issue with merit

11

arbitrations that she did not participate in, each arbitrator held their own proceedings consistent

12

with Consumer Rule 53. AAA Consumer Rule R-53 (the "arbitrator shall interpret and apply these

13

[Consumer] Rules as they relate to the arbitrator's powers and duties."). This Court cannot review

14

the merits arbitrators' handling of their arbitrations or AAA's interpretation of its own rules in

15

administering the mass arbitration. *See, e.g., Mosley* DC Order, 2023 WL 3185790, at *4; *Mosley*

16

Appellate Order, 2024 WL 977674, at *1 ("It is well-settled that questions of procedure relating to

17

arbitration are outside of the purview of the federal courts."); *Jones v. Starz Entm't, LLC*, 2024 WL

18

1067505, at *4 (C.D. Cal. Mar. 11, 2024) (appeal pending) (holding that arbitral provider's decision

19

under its own rules required court to "decline[ ] to address procedural issues of consolidation and

20

payment of arbitration fees which shall be decided by the arbitrator"); *Vital Pharms. Inc. v. PepsiCo*

21

*Inc.*, 2022 WL 2176528, at *3 n.3 (D. Ariz. June 16, 2022) ("The Court has no warrant to disturb

22

the AAA's interpretation of its own rules"). As a result, this is not grounds to avoid arbitration.

23

**3.    Ms. Wagman-Geller likewise cannot avoid arbitration by bringing a baseless "Fraud in the Inducement" claim.**

24

25

Ms. Wagman-Geller's fraud in the inducement claim is a blatant attempt to have the Court

26

intervene in arbitration when it otherwise has no authority to do so.

27

In certain circumstances, a court may need to determine the arbitrability of a dispute. For

28

example, where a "fraud in the inducement" claim attacks the arbitration provision itself rather than

-16-                    CASE NO. 3:24-CV-06778-SK

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

the contract as a whole, then the court must decide whether the arbitration provision itself "is invalid and unenforceable under" under the FAA. *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1264 (9th Cir. 2006). Ms. Wagman-Geller apparently hopes that adding this fraudulent inducement claim will somehow change the prior conclusion other courts have found that this claim must be arbitrated. *Mosley* DC Order, 2023 WL 3185790, at *4; *Mosley* Appellate Order, 2024 WL 977674, at *2-3.

In attempting to avoid arbitration, Ms. Wagman-Geller alleges Wells Fargo fraudulently induced her to enter the Account Agreement she entered into in 2011 and was amended as of July 2024 in two ways. First, by promising Ms. Wagman-Geller a "more streamlined" and "cost-effective" process than a typical court case but then "design[ing] the arbitration process to be difficult, time-consuming, and expensive." FAC ¶¶ 129, 133. Second, by promising a neutral arbitral body to resolve disputes but then having a "collusive relationship" with AAA such that AAA was "directly complicit in Wells Fargo's refusal to allow" Ms. Wagman-Geller to arbitrate her claims. *Id.* ¶¶ 52-57, 133. Both allegations are meritless and regardless do not preclude the Court from finding the parties' arbitration agreement enforceable—particularly given that Ms. Wagman-Geller already submitted her core Regulation E claims to the AAA's authority.

As to Ms. Wagman-Geller's first allegation, Wells Fargo did not implement any "designs" that made the arbitration process difficult, time-consuming, or expensive. Rather, Wells Fargo and MLG made arguments at preliminary hearings regarding the parties' positions related to preliminary information exchanges and the amendment of claimants' demands, the necessity of briefing on those issues, and whether the arbitrators should require in-person depositions and hearings. Baiardo Decl. ¶¶ 49-50. Each individual merits arbitrator then entered an order on those issues. *Id.* ¶¶ 50-51, Exs. 65, 68-71. Likewise, MLG's complaint that all of the mass arbitrations should be subject to class-wide procedures like one corporate deposition rings hollow. Each claimant's arbitration is an individual arbitration—with claimants who signed up for DCOS at different times when there may have been differing disclosures, through different methods, and at different locations throughout the country. To the extent Ms. Wagman-Geller complains about Wells Fargo's request for in-person hearings, this is curious given that over 60% of MLG's claimants, including Ms. Wagman-Geller, specifically requested an in-person hearing in their

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

demands. *Id.* ¶ 3, Ex. 2. And Wells Fargo has concerns about whether Ms. Wagman-Geller or MLG's other clients are even aware of the numerous actions MLG has taken to date in the mass arbitration that not only slowed down claimants' arbitrations but led to the voluntary dismissal of their demands based upon an admitted desire *for MLG to avoid costs* that *MLG agreed to cover*. *See id.* ¶ 56, Ex. 75 at Ex. D ("McCune Law Group is fighting back against predatory overdraft fees by representing customers of the largest banks in the United States like Wells Fargo and Chase and helping them reclaim their fees **at absolutely no cost to the client**.").

It is difficult to understand why an individual claimant would not want to move forward with their individual arbitration hearing based on MLG's concerns regarding its expenditures—especially when MLG's solicitations used to gather claimants specifically stated that claimants would not incur costs. *See id.* Notably, MLG did not allege that Ms. Wagman-Geller—or any claimant—took issue with Wells Fargo's request for an in-person hearing or deposition. MLG solicited and undertook claimants' representations *en masse*, on behalf of claimants located throughout the country. Whether it is a profitable business endeavor for MLG to pursue claimants' individual claims against Wells Fargo is inconsequential, and it does not support a finding that Wells Fargo fraudulently induced Ms. Wagman-Geller to enter her Arbitration Agreement.

As to Ms. Wagman-Geller's allegation about collusion, that argument fails because there is simply no collusion between Wells Fargo and AAA. MLG's support for its contention that AAA is in collusion with Wells Fargo is that Wells Fargo and other banks are clients of the law firm Mayer Brown LLP ("Mayer Brown"), that AAA's Council includes an attorney from Mayer Brown, that four different Mayer Brown attorneys drafted a whitepaper on behalf of the U.S. Chamber of Commerce (the "Chamber") pointing out the abuses stemming from mass arbitrations and proposed solutions to the same, and that AAA amended the Supplementary Rules to include certain suggestions made in the Chamber's whitepaper.[17] FAC ¶ 56. These arguments do not show

---

[17] MLG's discussion of the amended Supplementary Rules is not relevant because the issue here is with Ms. Wagman-Geller's individual arbitration, and not the Process Arbitrator's procedural rulings in the mass arbitration pursuant to the Supplementary Rules. Moreover, the amended Supplementary Rules are not applicable to this dispute. Baiardo Decl. ¶ 4, n.2. MLG's arguments related to the amended Supplementary Rules are thus meaningless.

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR, IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1   collusion between AAA and Wells Fargo against consumers generally, or against Ms. Wagman-

2   Geller specifically.

3          Wells Fargo is unaware of any court finding AAA bias towards a specific entity such that a

4   party could avoid its agreement to arbitrate against the entity with AAA. To the contrary, every

5   court that has analyzed the issue has flatly rejected the allegation. *See, e.g., Nagrampa*, 469 F.3d at

6   1285 (holding that "merely raising the 'repeat player effect' claim, without presenting more

7   particularized evidence demonstrating impartiality [on behalf of AAA], is insufficient under

8   California law to support an unconscionability finding"); *Serrano v. Macys W. Stores, Inc.*, 2020

9   WL 6083439, at *6 (C.D. Cal. July 9, 2020) (rejecting argument that "the AAA system is rigged in

10  Defendant's favor" and finding argument "particularly weak because [plaintiff] provide[d] no

11  evidence comparing the results in arbitration to those in court").

12         MLG's same argument has been addressed—and rejected—by the Third Circuit making

13  similar allegations of collusion between AAA and a major financial institution. *See Lerner v.*

14  *Citigroup*, 2019 WL 1579512, at *4 (D.N.J. Apr. 12, 2019), *aff'd*, 838 F. App'x 682 (3d Cir. 2020).

15  In *Lerner*, the plaintiff alleged that an arbitration award should be vacated because a "relationship

16  between the AAA and Citigroup gave rise to a conflict of interest." *Id.* The alleged conflicts of

17  interest were that: (1) a partner at Skadden, Arps, Slate, Meagher and Flom LLP ("Skadden") was

18  a board member of AAA and Skadden had represented and advised Citigroup "on over a dozen

19  cases"; and (2) the Chair of AAA's Board of Directors and a Citigroup executive sat together on

20  the board of directors of another company. *Id.* The court held that these connections were "too

21  tenuous to demonstrate partiality or a problematic conflict of interest." *Id.* The court determined

22  that "[n]o reasonable inference of bias or unfairness [arose] from these tangential links between

23  persons affiliated with the AAA and Citigroup or Skadden," that "[n]o fact or issue relevant to this

24  particular case [was] implicated," and that plaintiff did not assert that the arbitrator "was aware of

25  these connections or explained how they would influence him to be biased in favor of [defendant]."

26  *Id.* Here, MLG has provided no evidence as to how the tangential relationship between AAA and

27  Mayer Brown is relevant to Ms. Wagman-Geller's individual arbitration, especially considering the

28  fact that AAA never made a ruling on MLG's issues. Accordingly, the *Lerner* court's analysis

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1   applies and the Court should reject MLG's general allegations of collusion.

2       As a result, the Court must compel Ms. Wagman-Geller's claims to arbitration or, in the

3   alternative, dismiss her claims.

4   **IV.    THE COURT SHOULD ALTERNATIVELY DISMISS THE FRAUD IN THE**

5       **INDUCEMENT CLAIM**

6       If not compelled to arbitration, Ms. Wagman-Geller's fraud claim must be dismissed

7   because she fails to plead facts that would support such a claim. Indeed, a critical analysis of the

8   allegations makes clear that Ms. Wagman-Geller's claim is nonsensical and requires dismissal. The

9   FAC alleges that *Wells Fargo and AAA* made fraudulent misrepresentations to Ms. Wagman-Geller

10  in July 2024 (when Wells Fargo amended its arbitration agreement to include the language at issue

11  here and was in place when this action was filed) regarding Wells Fargo's future defense of a yet-

12  to-be-asserted arbitration by Ms. Wagman-Geller.

13      "Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable

14  legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory." *Somers v.*

15  *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). "To survive a motion to dismiss, a complaint must

16  contain sufficient factual matter ... to state a claim for relief that is plausible on its face." *Ashcroft*

17  *v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 9(b) provides that parties alleging fraud "must state with

18  particularity the circumstances constituting fraud or mistake." To comply with Rule 9(b), the

19  plaintiff must allege "the who, what, when, where, and how of the misconduct charged," and

20  explain "what is false or misleading about a statement, and why it is false." *Ebeid ex rel. U.S. v.*

21  *Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010). A plaintiff must *plead specific facts* explaining why

22  the statements were false. *Veal v. LendingClub Corp.*, 423 F. Supp. 3d 785, 805 (N.D. Cal. 2019).

23      Fraud in the inducement requires the plaintiff to plead facts showing: "(1) a

24  misrepresentation, false representation, concealment or nondisclosure; (2) knowledge of falsity; (3)

25  intent to defraud or to induce plaintiff to enter into a contract; (4) justifiable reliance; and (5)

26  resulting damage." *White v. FCA US LLC*, 2022 WL 3370791, at *5 (N.D. Cal. Aug. 16, 2022).

27      ***First***, the FAC lacks the required specificity under Rule 9(b). Ms. Wagman-Geller's

28  fraudulent inducement claim is based on allegations that Wells Fargo's represented that arbitration

-20-

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

is "more streamlined [and] cost effective" than a typical court case and that Wells Fargo "hope[d] to resolve [disputes] as quickly and as easily as possible." FAC ¶ 129. However, Ms. Wagman-Geller never explains why those statements were individually false, does not identify when the statements were received by Ms. Wagman-Geller, how they were made to Ms. Wagman-Geller, or whether they were even relied upon. *See Id.* ¶¶ 126-139. This does not meet Rule 9(b)'s requirements. *See Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 911-14 (N.D. Cal. 2020) (the plaintiffs failed to satisfy Rule 9(b) in proposed class action because the complaint did not allege when the named plaintiffs entered into the agreement at issue or perceived the alleged misstatements); *Sukonik v. Wright Med. Tech.*, 2015 WL 10682986, at *15 (C.D. Cal. Jan. 26, 2015) ("Plaintiff also fails to specify when he was exposed to the representations").

**Second,** Ms. Wagman-Geller's allegations do not support a fraudulent inducement claim.

**Misrepresentation/False Representation:** The FAC's generic statement that Wells Fargo promised streamlined arbitrations in its arbitration agreement does not rise to the level of a misrepresentation. To be actionable, "a statement must be specific and measurable and capable of being proven true or false." *Azoulai v. BMW of N. Am. LLC*, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017). "Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable.'" *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005). The allegations set forth in the FAC are the exact type of non-actionable puffery that cannot support a fraudulent inducement claim. *See, e.g., Garcia v. General Motors LLC*, 2019 WL 1209632, at * 4 (E.D. Cal. Mar. 14, 2019) (statement that an engine family had a "well-earned reputation for durability, power and efficiency" was not actionable); *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1052-53 (9th Cir. 2008) (statement that the defendants "would deliver 'flexibility' in their 'cost-per-copy' contracts and that they would lower copying costs" was non-actionable puffery).

**Knowledge of Falsity**: While the FAC alleges Wells Fargo's representations were false because they created an "arduous, cumbersome, and expensive" process through "extensive motion practice," "lengthy preliminary hearings," deposing 30(b)(6) witnesses in each individual case, and conducting "in person hearings and depositions in each case all over the country" [FAC ¶ 133],

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

these conclusory allegations do not demonstrate that the individual arbitrations were actually more costly, burdensome, or inefficient compared to an ordinary court case or arbitration—particularly considering Ms. Wagman-Geller voluntarily dismissed her claim before proceeding to a merit arbitrator. Without an explanation of why or how the representations were false, falsity is not plead. *Veal*, 423 F. Supp. 3d at 805-08 (dismissing fraudulent inducement claim where plaintiff failed to explain why or how the alleged statements were false). Moreover, the FAC does not allege that Wells Fargo knew the statements contained in her Arbitration Agreement were false at the time they were made. Indeed, Wells Fargo could not have known at the time how Ms. Wagman-Geller's arbitration would proceed, nor could it have known the effect of MLG's conduct in the mass arbitration, which has resulted in substantial delay and costs to the parties. This requires dismissal. *Golden W. Wings LLC v. ShiftPixy, Inc*, 2023 WL 6787815, at *6 (C.D. Cal. Sept. 11, 2023) (dismissing fraud claim based on the implausibility that the defendant knew purported false statements were false at the time they were made); *see also UMG Recordings, Inc. v. Glob. Eagle Ent., Inc.*, 117 F. Supp. 3d 1092, 1108 (C.D. Cal. 2015) ("[A]lleging why the promise was false when made requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made.").

**Intent to Induce**: While intent can be plead generally, the FAC does not identify specific facts demonstrating intent beyond a conclusory statement that Wells Fargo "knew of the falsity of their representations regarding arbitration at the time they were made, and intended that such misrepresentations would induce consumers to rely on them and agree to arbitrate their claims." FAC ¶¶ 19, 137. This is insufficient to state a fraudulent inducement claim. *See Garcia*, 2019 WL 1209632, at *5-6 (intent to defraud not pled where no facts concerning representations relied upon, who made the representations, the content of the representations relied on, or when the representations were made); *Mesa Safe Co., Inc. v. Amazon.com Servs., Inc.*, 2019 WL 6723422, at *5 (C.D. Cal. Oct. 4, 2019) (mere nonperformance of a contract is insufficient to allege intent).

**Justifiable Reliance**: The FAC also fails to sufficiently allege justifiable reliance. The FAC's only allegation regarding purported reliance is that "[t]he misrepresentations are likely to mislead a reasonable consumer who is acting reasonably under the circumstances." FAC ¶ 136.

1   This level of generality is insufficient to demonstrate justifiable reliance because Ms. Wagman-

2   Geller does not specifically explain why reliance was justified, nor identify the specific statements

3   she relied on. *See Garcia*, 2019 WL 1209632, at *5 (plaintiffs failed to plead reliance because they

4   did not "logically link the pleaded advertising and the specific representations these plaintiffs

5   'justifiably and reasonably' relied upon.").

6   **Resulting Damage**: Finally, Ms. Wagman-Geller cannot establish damages as she

7   voluntarily dismissed her claim from arbitration without prejudice.

8   Accordingly, Ms. Wagman-Geller's fraudulent inducement claim should be dismissed.

9   **V.    CONCLUSION**

10   Wells Fargo requests that the Court grant its motion to compel arbitration pursuant to

11   Section 3 of the FAA, stay the instant proceedings pending completion of Ms. Wagman-Geller's

12   individual arbitration with Wells Fargo or, in the alternative, dismiss Ms. Wagman-Geller's fraud

13   inducement claim.

14   DATED: February 14, 2025                    **MCGUIREWOODS LLP**

16                                          By:  */s/ Alicia A. Baiardo*

17                                               Alicia A. Baiardo
                                                 Amy Morrissey Turk (*pro hac vice granted*)
18                                               Todd J. Dressel

19                                               Attorneys for Defendants Wells Fargo & Co. and
20                                               Wells Fargo Bank, N.A.

-23-                        CASE NO. 3:24-CV-06778-SK

DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION OR,
IN THE ALTERNATIVE, DISMISS THE FIRST AMENDED COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2025 I electronically filed the foregoing document entitled **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION, OR IN THE ALTERNATIVE, DISMISS THE COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California using the CM/ECF system and served a copy of same upon all counsel of record via the Court's electronic filing system.

*/s/ Alicia A. Baiardo*
Alicia A. Baiardo