UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARLENE WAGMAN-GELLER,<br>Plaintiff,<br>v.<br>WELLS FARGO BANK N.A, et al.,<br>Defendants. | Case No. 24-cv-06778-SK<br><br>**ORDER GRANTING MOTION TO TRANSFER**<br><br>Regarding Docket Nos. 31, 34, 35 |

Three motions are currently pending before the Court: (1) a motion to transfer filed by Defendants Wells Fargo & Company and Wells Fargo Bank N.A., (collectively, "Wells Fargo"), (2) a motion to compel arbitration or to dismiss filed by Wells Fargo, and (3) a motion to dismiss filed by Defendant American Arbitration Association, Inc. ("AAA"). (Dkt. Nos. 31, 34, 35.) This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332 and 1367(a), and all parties have consented to the jurisdiction of a magistrate judge. (Dkt. Nos. 10, 20, 23.) The Court deems this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b), and VACATES the April 14, 2025 hearing. Having carefully considered the parties' papers, relevant legal authority, and the record in the case, the Court hereby GRANTS Wells Fargo's motion to transfer this case to the United States District Court for the Southern District of California for the reasons set forth below. The remaining motions should thus be heard by the Southern District of California and are therefore DENIED AS MOOT.

**BACKGROUND**

On December 27, 2022, Plaintiff Marlene Wagman-Geller ("Plaintiff") filed a demand for arbitration with AAA challenging Wells Fargo's overdraft and nonsufficient fund ("NSF") practices under Regulation E of the Electronic Fund Transfers Act, as well as state contract and consumer protection law. (Dkt. No. 36-1, pp. 54-61.) Plaintiff is one of nearly 4,000 individuals

1  represented by McCune Law Group ("MLG") to have filed an arbitration demand challenging
2  Wells Fargo's fee practices between 2022 and 2024.  (Dkt. No. 36, ¶¶ 3, 5.)
3        On July 29, 2022, AAA appointed a Process Arbitrator to oversee the mass arbitration.
4  (*Id.* at ¶ 6.)  The Process Arbitrator ordered each claimant to file an amended claim including: (1)
5  the claimant's account number, (2) facts establishing that the claimant was enrolled in Wells
6  Fargo's overdraft program, and (3) facts establishing that the claimant incurred overdraft fees in
7  connection with transactions covered by Regulation E (the "Process Arbitrator Order").  (Dkt. No.
8  36-1, p. 538.)  MLG objected to these requirements on the grounds that they impose heightened
9  pleading requirements that were not contemplated by the arbitration agreement or any other
10 authority.  (Dkt. No. 36-1, pp. 540-41.)
11       On December 13, 2022, four claimants from the mass arbitration, represented by MLG,
12 filed a complaint in the Southern District of California against Wells Fargo.  (*Mosley et al v. Wells*
13 *Fargo & Co. et al*, No. 22-cv-01976-BJC-SBC, Dkt. No. 1).  The *Mosley* Complaint asserted
14 violations of Regulation E based on Defendants' failure to provide adequate notice prior to
15 charging overdraft fees.  (*Id.*)  The *Mosley* Complaint sought judicial review of these claims based
16 on challenges to the arbitration proceedings and the Process Arbitrator Order.  (*Id.* at ¶¶ 1-15.)
17 The Complaint alleged that AAA "abetted" Wells Fargo to "misle[a]d consumers" about the
18 arbitration process and engage in an "obstructive strategy" to impede efficient claim resolution.
19 (*Id.*)  AAA was named as an "Interested Party."  (*Id.* at ¶ 22.)  Ultimately, the district court
20 granted Wells Fargo's motion to compel arbitration, and the Ninth Circuit affirmed that decision.
21 *Mosley v. Wells Fargo & Co.*, No. 22-CV-01976-DMS-AGS, 2023 WL 3185790, at *1 (S.D. Cal.
22 May 1, 2023), *aff'd*, No. 23-55478, 2024 WL 977674 (9th Cir. Mar. 7, 2024).
23       While the *Mosley* appeal was pending, the Process Arbitrator dismissed without prejudice
24 all claimants who had failed to meet the filing requirements set out in the Process Arbitrator
25 Order.  (Dkt. No. 36-2, p. 1008.)  Plaintiff satisfied the filing requirements, and her claim was not
26 dismissed.  (Dkt. No. 36, ¶ 40.)
27       The dismissed claimants, represented by MLG, filed a class action against Wells Fargo in
28 the United States District Court for the Northern District of California (the "Northern District") on

February 8, 2024. (*Penuela et al v. Wells Fargo NA et al*, No. 24-cv-00766-KAW, Dkt. No. 1.) The Operative Complaint in *Penuela* again asserted that violations of Regulation E based on Wells Fargo's overdraft program and added allegations challenging Wells Fargo's practice of charging multiple NSF fees. (*Penuela*, Dkt. No. 14.) In addition, the *Penuela* Complaint alleged that Wells Fargo misrepresented AAA as a neutral, independent entity when, in reality, it maintained a "collusive relationship" with Wells Fargo. (*Id.* at ¶¶ 9-13, 111.) As a result of this "cozy pre-existing relationship," Wells Fargo and AAA had allegedly formed arbitration rules that prevented Plaintiffs from moving forward with their arbitrations. (*Id.*)

Wells Fargo moved to transfer the *Penuela* action to the Southern District of California based on the similarities between the *Mosley* and *Penuela* actions. (*Penuela*, Dkt. No. 19.) On November 6, 2024, the Honorable Kandis A. Westmore, finding that transfer was warranted under both the first-to-file rule and 28 U.S.C. § 1404(a), granted Wells Fargo's motion to transfer *Penuela* to the Southern District of California. (*Penuela*, Dkt. No. 32.) *Penuela* remains pending in the Southern District of California. (*Penuela et al v. Wells Fargo Bank NA et al*, No. 24-cv-02098-BJC-SBC.)

Meanwhile, arbitrations proceeded for the claimants who had satisfied the requirements of the Process Arbitrator Order. (Dkt. No. 36, ¶ 48.) However, the arbitrations continued to face roadblocks, including disagreements over objections to the AAA-appointed arbitrators, the information Wells Fargo was required to produce, and requirements that claimants appear in person for arbitration. (*Id.* at ¶¶ 48-63.)

On September 26, 2024, all claimants who had not yet been assigned to an arbitrator, including Plaintiff, submitted voluntary notices of dismissal. (*Id.* at ¶ 64.) The same day, a class of Wells Fargo customers represented by MLG filed the instant action against Wells Fargo and AAA. (Dkt. No. 1.) Wagman-Geller was substituted in as the named plaintiff after the original named plaintiff passed away. (Dkt. No. 24.) The Amended Complaint challenges Wells Fargo's overdraft and NSF fee practices under Regulation E and California's Unfair Competition Law ("UCL"). (*Id.*) In addition, the Amended Complaint accuses Wells Fargo and AAA of colluding to misrepresent the arbitration process, resulting in fraud in the inducement, breach of contract,

3

and UCL violations. (*Id.*)  AAA filed its motion to dismiss on February 13, 2025, and Wells Fargo filed its motions to transfer, compel arbitration, or dismiss on February 14, 2025.  (Dkt. Nos. 31, 34, 35.)  The motions were fully briefed.  (Dkt. Nos. 42-47.)

## ANALYSIS

### A. Transfer Pursuant to the First-to-File Rule.

Wells Fargo argues that this action should be transferred to the Southern District of California under the first-to-file rule due to the similarities between this case and *Mosley* and *Penuela*.  (Dkt. No. 34, pp. 17-21.)  The first-to-file rule allows district courts discretion to transfer, dismiss, or stay a case "if a similar case with substantially similar issues and parties was previously filed in another district court."  *Kohn L. Grp., Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1239 (9th Cir. 2015); *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622, 625, 628 (9th Cir. 1991).  "The first-to-file rule was developed to serve the purpose of promoting efficiency well and should not be disregarded lightly."  *Alltrade*, 946 F.2d at 625 (citation omitted, cleaned up).  When applying the first-to-file rule, "a court analyzes three factors: chronology of the lawsuits, similarity of the parties, and similarity of the issues."  *Kohn*, 787 F.3d at 1240.[1]

#### 1. Chronology of the Lawsuits.

It is undisputed that *Mosley* and *Penuela* were filed before the instant action.  (Dkt. Nos. 43, 45 p. 7 n.1.)

#### 2. Similarity of the Parties.

"[T]he first-to-file rule requires only substantial similarity of parties" and "does not require exact identity of the parties."  *Kohn*, 787 F.3d at 1240.  All three actions involve a group of aggrieved Wells Fargo's consumers as plaintiffs and Wells Fargo as a defendant.  (Dkt. No. 24; *Penuela*, Dkt. No. 14.; *Mosley*, Dkt. No. 1.)  However, Plaintiff argues that the parties are not substantially similar because (1) this action involves an additional defendant—AAA—who was not named in *Mosley* or *Penuela*, and (2) this action involves a larger putative class than *Penuela*.

---

[1] The Court does not discuss the equitable exceptions to the first-to-file rule because they were not briefed by the parties.  *See generally Therapy Stores, Inc. v. JGV Apparel Grp., LLC*, No. 4:16-CV-02588-YGR, 2016 WL 4492583, at *4-5 (N.D. Cal. Aug. 26, 2016).

4

(Dkt. No. 43, pp. 12-13.)  Neither argument is persuasive.

        **i.**        **Comparison of Defendants.**

The addition of a defendant in a later-filed action does not preclude a finding of substantial similarity between the parties under the first-to-file rule.  *Hill v. Robert's Am. Gourmet Food, LLC*, No. 13-CV-00696-YGR, 2013 WL 3476801, at *4 (N.D. Cal. July 10, 2013) ("The fact that there is an additional defendant in this case does not negate the *substantial similarity* between the actions."); *see also Dang v. TEOCO Corp. Grp. Benefit Plan*, No. 21-55032, 2023 WL 5925890, at *2 (9th Cir. Sept. 12, 2023) (finding substantial similarity of the parties where three additional defendants were named in the later-filed suit); *Ortiz v. Walmart, Inc.*, No. 2:20-CV-05052-AB-KK, 2020 WL 5835323, at *3 (C.D. Cal. Sept. 18, 2020) (one additional defendant named); *Pac. Coast Breaker, Inc. v. Conn. Elec., Inc.*, No. CIV. 10-3134 KJM EFB, 2011 WL 2073796, at *3 (E.D. Cal. May 24, 2011) (two additional defendants named).

A finding of substantial similarity is particularly appropriate where, as here, the newly-added defendant is "closely related" to the original defendants and actions.  *Zou v. Mkt. Am., Inc.*, No. 19-CV-01282-LHK, 2019 WL 13218583, at *7 (N.D. Cal. Sept. 12, 2019); *Prime Healthcare Servs., Inc. v. Serv. Emps. Int'l Union*, No. 14-CV-3831 YGR, 2014 WL 5422631, at *3 (N.D. Cal. Oct. 24, 2014).  AAA was named as an "Interested Party" in *Mosley* and was discussed at length in *Penuela*.  (*Penuela*, Dkt. No. 14., ¶ 111; *Mosley*, Dkt. No. 1, ¶ 22.)  AAA is included in the present action precisely because of its allegedly close relationship with Wells Fargo.  (Dkt. No. 24, ¶¶ 52-57.)  Accordingly, the addition of AAA as a defendant in this action does not defeat application of the first-to-file rule.

        **ii.**        **Comparison of Plaintiffs.**

The fact that this action involves a larger putative class than *Penuela* does not negate the fact that all three actions involve a similar group of plaintiffs.  "In the class action context, most district courts in this circuit compare the putative classes rather than the named plaintiffs." *Young v. L'Oreal USA, Inc.*, 526 F. Supp. 3d 700, 705 (N.D. Cal. 2021) (citation and internal quotation marks omitted).

The plaintiffs in *Mosley*, *Penuela*, and this action are Wells Fargo consumers who were

1  assessed overdraft fees and seek to challenge those fees. *Mosley*, which was not a class action,
2  involved four plaintiffs awaiting arbitration of their Regulation E claims. (*Mosley*, Dkt. No. 1, ¶¶
3  16-19.) The putative classes in *Penuela* and in this action are identical, except that the *Penuela*
4  classes are limited to individuals "whose claims have been dismissed from arbitration without a
5  substantive hearing, or have not yet filed their claim in arbitration." (*Compare* Dkt. No. 24, ¶ 113
6  *with Penuela*, Dkt. No. 14., ¶ 134.) Thus, the instant class is broader than the *Penuela* class
7  because it includes individuals, like Plaintiff, whose claims were not dismissed from arbitration.
8        Plaintiff argues that judicial efficiency is only served where the class in the earlier action
9  "entirely subsume[s] the proposed class" of a later action, citing *Avery v. TEKsystems, Inc.*, No.
10  22-CV-02733-JSC, 2022 WL 3998499, at *3 (N.D. Cal. Aug. 31, 2022). (Dkt. No. 43, p. 12.)
11  *Avery* does not stand for the proposition that the later action must have a broader class definition
12  that the earlier action. Rather, *Avery* held that two putative classes were not substantially similar
13  where they had "only minimal overlap" and distinguished from a case in which the earlier action's
14  putative class entirely subsumed the later action's proposed class. *Avery*, 2022 WL 3998499, at
15  *3. *Avery* thus suggests that the comparative largeness of an earlier action is sufficient—but not
16  necessary—to establish substantial similarity of the parties.
17        Further, district courts routinely find substantial similarity of the parties where, as here, the
18  proposed class in the later action is broader than that in the earlier action. *E.g., Montijo v.*
19  *Amazon.com Servs. LLC*, No. 122CV00084ADASAB, 2022 WL 16702134, at *6-8 (E.D. Cal.
20  Nov. 3, 2022), *report and recommendation adopted*, No. 122CV00084ADASAB, 2022 WL
21  17722873 (E.D. Cal. Dec. 15, 2022); *Reynosa v. Home Depot U.S.A., Inc.*, No.
22  EDCV21640JGBSHKX, 2021 WL 5000693, at *2 (C.D. Cal. June 19, 2021); *Pedro v. Millennium*
23  *Prods., Inc.*, No. 15-CV-05253-MMC, 2016 WL 3029681, at *4 (N.D. Cal. May 27, 2016).
24  Moreover, district courts even find substantial similarity where putative classes are mutually
25  exclusive, such as when the plaintiffs are residents of different states but represent identical
26  interests. *Young*, 526 F. Supp. 3d at 705; *Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-
27  JST, 2014 WL 1510853, at *10 (N.D. Cal. Apr. 15, 2014).
28        In sum, the parties to this action are substantially similar to those involved in *Mosley* and

*Penuela*.  The similarity-of-the-parties factor weighs in favor of transfer.

### 3. Similarity of the Issues.

"The issues in both cases also need not be identical, only substantially similar." *Kohn*, 787 F.3d at 1240.  Substantial similarity does not require "total uniformity of claims." *Jia v. Weee! Inc.*, No. 23-CV-02314-DMR, 2024 WL 218121, at *3 (N.D. Cal. Jan. 19, 2024) (quoting *Mullinix v. US Fertility, LLC*, No. SACV 21-00409-CJC(KESx), 2021 WL 4935976, at *3 (C.D. Cal. June 8, 2021)).  Rather, courts focus on "the underlying factual allegations" and "whether 'the core theory for both cases is the same.'" *Id.* (quoting *Mullinix*, 2021 WL 4935976, at *3).

Plaintiff argues that the instant action involves distinct issues because the new "fraud in the inducement claim shifts the Court's inquiry from post-contracting to pre-contracting events." (Dkt. No. 43, pp. 13-14.)  The addition of the new fraud in the inducement claim does not negate substantial similarity.  *See Jia*, 2024 WL 218121, at *3.  What matters is that all three cases rely on the same core theory: that Wells Fargo's overdraft program violated Regulation E.  (*Compare* Dkt. No. 24, ¶ 1 *with Penuela*, Dkt. No. 14., ¶ 1 *with Mosley*, Dkt. No. 1, ¶ 1.)  Plaintiff says herself that the "underlying gravamen of the dispute is Wells Fargo's unfair and deceptive overdraft fee practices, which injured Plaintiff and thousands of others." (Dkt. No. 43, p. 7.)  Further, Plaintiff is incorrect that this action is the first to raise the issue of misrepresentation of the arbitration process.  Both *Mosley* and *Penuela* alleged that Wells Fargo had a collusive relationship with AAA and misrepresented the cost and efficiency of the arbitration process. (*Penuela*, Dkt. No. 14., ¶¶ 9-13, 111-131; *Mosley*, Dkt. No. 1, ¶¶ 3-10, 22, 79-82.)

In sum, this action seeks a judicial forum for Wells Fargo's customers to litigate their Regulation E claims, or, put otherwise, "to avoid [*Mosley*]'s adverse ruling and to illicit a favorable, yet inconsistent, judgment." *Young*, 526 F. Supp. 3d at 707.  "That very conduct is exactly what the first-to-file rule is intended to prevent." *Id.*  Accordingly, transfer to the Southern District of California is warranted under the first-to-file rule.

### B. Transfer Pursuant to 28 U.S.C. § 1404(a).

In the alternative, Wells Fargo argues that this case should be transferred to the Southern District of California pursuant to the general transfer statute, 28 U.S.C. § 1404(a).  (Dkt. No. 34,

pp. 21-28.) Section 1404(a) grants district courts discretion to transfer a civil action to any district where the case could have been filed originally "[f]or the convenience of parties and witnesses" and "in the interest of justice." 28 U.S.C. § 1404(a); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 278-79 (9th Cir. 1979). "To determine if a transfer of venue is appropriate under § 1404(a), courts apply a two-part test." *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 833 (N.D. Cal. 2018). "First, courts consider whether the case could have been brought in the proposed transferee district." *Id.* "Second, if the case could have been brought in the transferee district, courts determine if the case should be moved to that forum for convenience of parties and witnesses [and] in the interest of justice." *Id.* (citation and quotation marks omitted). The moving party bears the burden of showing that transfer is warranted. *Id.*

Here, the first part of the test—whether jurisdiction and venue are appropriate in the Southern District of California—is clearly satisfied. The Southern District of California has the same subject matter and personal jurisdiction as this Court. And as the *Mosley* complaint alleged, "Wells Fargo transacts business, the parties entered into contracts, and Wells Fargo executed the unlawful policies and practices which are the subject of this action, in [the Southern] District." (*Mosley*, Dkt. No. 1, ¶ 30.) The Southern District of California is also the district where Plaintiff opened an account with Wells Fargo. (Dkt. No. 37, ¶ 2.) Further, Plaintiff does not dispute that the case could have been filed in the Southern District of California. (Dkt. No. 43.)

As for the second part of the test—balancing the convenience of the parties and the interests of justice—courts consider a wide variety of factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Consideration of these factors demonstrates that litigation in the Southern District of California would be more efficient and convenient than litigation in this Court. Most importantly, transfer would facilitate consolidation of this action and the clearly-related *Penuela*, which would

8

avoid duplicative judicial effort and reduce the risk of inconsistent rulings. (*See Penuela*, Dkt. No. 19, p. 7.); *see also Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [§] 1404(a) was designed to prevent."). Plaintiff argues that the judge presiding over *Penuela* is not the same judge who presided over *Mosley*, so the transferee judge is not already familiar with the case. (Dkt. No. 43, p. 16.) Even if the *Penuela* judge must learn the case, it is more efficient for one judge to do so than two to do so.

With regard to convenience, the convenience of the parties is best served by resolving this action and *Penuela* together in a single forum. *See Kudsk v. Bara Infoware, Inc.*, No. 17-CV-05350-SI, 2019 WL 2775573, at *4 (N.D. Cal. July 2, 2019) ("The convenience of the parties and interests of judicial economy weigh in favor of resolving all of these claims together at once."). MLG and Wells Fargo are already litigating *Penuela* in the Southern District of California, such that transfer of this case to that district would not impose any additional inconvenience. Further, MLG's initial selection of the Southern District of California and Plaintiff's residency in that district undercuts any argument that the Southern District of California is inconvenient for Plaintiff. (*See Penuela*, Dkt. No. 19, p. 7.)

Plaintiff's choice of forum warrants little weight because, as Judge Westmore concluded in *Penuela*, "there is clear indication of forum shopping." (*Penuela*, Dkt. No. 19, p. 6.); *Williams v. Bowman*, 157 F. Supp. 2d 1103, 1106 (N.D. Cal. 2001) ("If there is any indication that plaintiff's choice of forum is the result of forum shopping, plaintiff's choice will be accorded little deference."); *see also LegalForce, Inc. v. Legalzoom.com, Inc.*, No. 218CV06147ODWGJS, 2018 WL 6179319, at *3 (C.D. Cal. Nov. 27, 2018) ("Forum shopping could reasonably be inferred if the plaintiff files the same or similar case represented by the same law firm in a different district after receiving unfavorable rulings there.").[2] The parties agree that the remaining factors are

---

[2] Plaintiff does not address the forum shopping implications of MLG's multiple filings. Instead, she argues that forum shopping cannot be inferred from her residency in the Southern District of California because the original plaintiff, Joseph Bacigalupi, did not reside there. (Dkt. No. 43, p. 15.) The Court does not rely on Plaintiff's residency to support the inference of forum

1  neutral.

2  In sum, several factors favor transfer and several factors are neutral, but no factors weigh
3  against transfer.  Accordingly, transfer to the Southern District of California is warranted under §
4  1404(a).

## CONCLUSION

For the foregoing reasons, the Court GRANTS Wells Fargo's motion to transfer this case to the United States District Court for the Southern District of California.  The clerk is instructed to transfer the file.  The motion by Wells Fargo to compel arbitration or to dismiss and AAA's motion to dismiss are DENIED AS MOOT.

**IT IS SO ORDERED**.

Dated: April 4, 2025

_____
SALLIE KIM
United States Magistrate Judge

---

shopping, but notes that Bacigalupi's residency is no more helpful.  As Plaintiff states,"[t]he relevant inquiry is whether any of the initially named plaintiffs resided in a given district at the time of the original filing." (*Id.* at n.2 (citing *Lax v. Toyota Motor Corp.,* 65 F. Supp. 3d 772, 778 (N.D. Cal. 2014)).  Here, Plaintiff has not established that Bacigalupi resided in the Northern District, and the record suggests that he resided in the Eastern District of California.  (Dkt. No. 36-3, p. 1088.)

10